526 So.2d 475 (1988)
Leslie M. BARTLETT and Carolyn G. Bartlett
v.
I.D. REESE d/b/a I.D. Reese Company.
No. CA 87 0547.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
Rehearing Denied June 24, 1988.
Leo D'Aubin, Baton Rouge, for plaintiffs-appellants Leslie M. Bartlett and Carolyn G. Bartlett.
Kevin Monahan, Baton Rouge, for defendant-appellee I.D. Reese, d/b/a I.D. Reese Co.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
This appeal arises from an alleged retaliatory dismissal of plaintiff-appellant, Leslie M. Bartlett, by defendant-appellee, I.D. Reese, d/b/a I.D. Reese Company, after plaintiff reported a possible environmental violation. From a judgment granting an exception of no cause of action, plaintiff and his wife appeal.

FACTS
At the time of the incident giving rise to this lawsuit, Bartlett had been a truck driver for defendant since March of 1983 and on an earlier occasion, from May of 1982 through September of 1982.
On June 30, 1983, Bartlett made a delivery of sulphuric acid to Formosa Plastics in Baton Rouge. While in the process of taking a sample of the acid from the truck he noticed a strong odor of chlorine which, he said burned his eyes and irritated his lungs. He entered the control room to report it, whereupon he was told the company was already aware there was chlorine in the sewer and that nothing could be done about it. He was then requested to leave the control room and wait by his truck until the contents were unloaded.
Before leaving the plant, Bartlett used a pay telephone outside the guard shack to call the Department of Natural Resources, Office of Environmental Affairs, to report the incident. He spoke to Greg Gasperecz, who assured him his call would be kept confidential.
He then returned to the Reese Company and informed defendant he would not haul any more acid to Formosa because of the chlorine incident. Defendant observed that Bartlett's eyes were red and watery, and that his face was pale.
Bartlett testified he then left for vacation until July 5. He stated he called defendant from his house that morning because defendant would normally call him to tell him which deliveries had been scheduled for the next day. When he called that morning, the first thing defendant allegedly asked was if he had filed a complaint with EPA against Formosa. Defendant allegedly told Bartlett someone from Formosa said that Bartlett had made a complaint. Defendant seemed mad and allegedly told Bartlett that he almost lost the contract *476 with Formosa. Bartlett denied making the complaint and asked defendant if he had anything for him to do whereupon defendant allegedly told him there wasn't anything at the moment, but to come in later.
Bartlett said he went to the plant at about 10:30 that morning and waited in the driver's room where he sat for about a half hour to forty-five minutes. Defendant then allegedly told Bartlett he didn't have anything for him to do if he refused to haul acid. Bartlett thereupon left.
That afternoon, Bartlett called Mr. Gasperecz and told him of the incident, whereupon he was advised to talk to an attorney. The investigation by the environmental quality control office revealed there was a problem, and that it would be corrected.
Bartlett then began looking for work and was offered a job driving a truck in Georgia where he and his wife had lived before.
After Bartlett and his wife arrived in Georgia, the prospective employer informed Bartlett he had decided not to hire anyone and would instead do the work himself.
Thereafter, Bartlett tried a variety of jobs. He worked four to six weeks driving a truck cross-country for a California company until he had an accident whereupon he and his wife decided to return to Baton Rouge to seek legal recourse against defendant.
Because of the alleged dismissal, the Bartletts were forced to cancel an agreement they had signed to purchase a house. They then spent a large part of the deposit on moving to Georgia and returning. In their petition, they ask for $179,250.00 in damages resulting from Bartlett's dismissal.
While the suit was pending, Bartlett first worked as a painter for several weeks until the weather got too cold and he was laid off. He then worked for Baton Rouge Sewer Company for three and a half months when he quit because the work was too physically demanding. Thereafter, he worked for Cajun Painting, but resigned because of his fear of heights. He then worked as a truck driver again, but said he quit because the job required him to drive cross-country and he was concerned about giving his 15-year-old son a proper home. His last job was selling Herbal Life, but the promised income never materialized. As of the trial he was attending Baton Rouge Vocational Technical Body and Fender School. His wife was able to return to her job at Our Lady of the Lake Hospital as a registered nurse, but had lost about one month of wages. Her heart condition was also aggravated as a result of her husband's dismissal. She has an irregular heart beat, called arrhythmia, and the assistant head nurse testified that Mrs. Bartlett was admitted briefly to the hospital at one point. Mrs. Bartlett's friends also testified that she appeared stressed.

TRIAL COURT
Following the trial, the trial court granted defendant's exception of no cause of action.
In oral reasons, the court stated that La.R.S. 30:1074.1,[1] is designed to protect *477 an employee who reports a possible violation by his own employer (not a third party as in the case sub judice) and then punished in retaliation. Such a strict interpretation of the statute, the court stated, is warranted by its penal nature, i.e. the allowance of treble damages.
The trial court also stated that even if the statute applied to such a situation as in the case sub judice, he found the facts did not indicate plaintiff was fired, but rather that he quit.

ASSIGNMENT OF ERROR
In their appeal, plaintiffs allege the trial court erred in granting the defendant's exception of no cause of action because La.R. S. 30:1074.1 is a remedial statute and should thus be broadly interpreted.

I
We pretermit discussion of whether the statute is penal or remedial as we find the purpose of the statute is dictated by the intent of the legislature.
When a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La.Civ.Code art. 10. See Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984).
La.R.S. 30:1074.1 is part of the Louisiana Environmental Quality Act. (La.R.S. 30:1051, et seq.) The purpose of the act, as set forth in La.R.S. 30:1053, is to provide for certain comprehensive policies that will maintain a healthful and safe environment.
For that reason, we think the meaning that best conforms to the purpose of La. R.S. 30:1074.1 is that which protects employees from retaliatory action by employers when the former reports possible environmental violations not only by their own employer but by a third person as well. A contrary interpretation weakens the statute and runs counter to the intent of the legislature.
Accordingly, as a matter of law, we hold La.R.S. 30:1074.1 prohibits retaliatory action by employers of persons reporting possible environmental violations by not only the employer, but others as well.

II
The trial court, notwithstanding its opinion that the statute did not protect plaintiffs, went on to rule that even had the case not been dismissed on the exception of no cause of action, the evidence did not show plaintiff was terminated, but that he left voluntarily.
Plaintiffs did not argue this factual point in their brief, but in the interest of fairness and what is just and legal, we overlook this omission pursuant to La.Code Civ.P. art. 2164.
In oral reasons, the trial court opined that the testimony of both parties was probably not an accurate recollection of what happened.
While an appellate court has full and complete jurisdiction to review facts in a civil proceeding, the factual findings of the trial court should not be disturbed unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
In the case sub judice, not only does the record indicate that plaintiff reported a possible chlorine leak on June 30, 1983, but an investigation revealed there was indeed a problem. In addition, defendant equivocated several times during the trial. Initially, he stated Bartlett refused to haul sulphuric acid (the acid he delivered to the Formosa plant on June 30) and that he told Bartlett that only five percent of his business consisted of chemicals other than sulphuric acid. He testified Bartlett could earn only $50 to $100 a week hauling the other chemicals and that there was not enough work if plaintiff was unwilling to *478 haul acid. On a subsequent day of testimony, defendant said Bartlett had refused to haul all "hazardous" chemicals. This subsequent testimony was after testimony was adduced, showing that Bartlett earned $285.00 to $482.00 a week hauling loads not containing sulphuric acid, thus disputing defendant's earlier contention. Defendant's subsequent testimony was also contrary to what he stated in his deposition.
Defendant further testified that Bartlett admitted to reporting the suspected leak the afternoon he returned from making the delivery to Formosa. That version, however, is disputed by Bartlett's recollection and by that of the environmental quality worker who testified that Bartlett was concerned that his call be kept confidential. Furthermore, the plant's shipping coordinator testified he called Leonard Aguillard, the president of Agway and Blue Flash (defendant provided Aguillard with drivers at an agreed-upon price) to ask that, in the future, drivers report to Formosa with complaints before going to the environmental quality control office.
Moreover, defendant could not explain why the dispatch books showed Bartlett as being "off" on vacation for seven days if Bartlett had quit the day he left for vacation. Bartlett and his wife both testified that Bartlett called defendant July 5, 1983, and was asked if he reported the chlorine leak, and Bartlett's wife also said her husband waited for more than an hour at defendant's business on July 5 before being told there was no work for him. Plaintiffs were stunned because a driver hired afterwards was still driving. Finally, the environmental worker testified Bartlett called him back at a later date to report his dismissal. The worker could not recall whether the call came July 5 (six days later) or three weeks later. Nevertheless, it is significant he did not state it was June 30, thus lending support to Bartlett's belief that he still had a job June 30 when he left for vacation. Also, Bartlett's friends testified he came over to their house the afternoon he was dismissedJuly 5to relate his disappointment over the loss of his job.
Thus, for the above-cited reasons, we find the trial court's factual finding was manifestly erroneous.

III

DAMAGES
La.R.S. 30:1074.1 B provides for "triple damages" resulting from the retaliatory action. "Damages," as defined by the statute, include, but are not limited to, "lost wages, lost anticipated wage due to wage increase, or loss of anticipated wages which would have resulted from a lost promotion, any property lost as a result of lost wages, lost benefits, and any physical or emotional damages resulting therefrom."
Plaintiffs seek the following damages:
Seven hundred fifty dollars invested in the planned purchase of a home which they were forced to cancel when Bartlett was dismissed; $2,000 to move to Georgia for a new job; $1,500 to return to Baton Rouge; $100,000 for lost earnings, and $75,000 for humiliation, mental anguish and frustration.
Of the $750 for the house, $300 was the deposit of which approximately $240 was refunded some two years later. Accordingly, plaintiffs lost $510 by not being able to buy the house.
Regarding the moving expenses, it is apparent that plaintiff did not have the job prior to going to Georgia, thus this loss is not recoverable.
Of the $100,000 plaintiffs claim to have lost in earnings, only $12,121 is documented by the record. While Bartlett was employed by defendant from March 18 through July 1, he earned $6,712.24. Hadhe stayed, we estimate he would have earned about $12,292. During the twelve months following his dismissal, he earned $10,765 excluding the unknown amount he earned from Herbal Life. For the period past 1984, the record does not show what Bartlett earned. However, as of the time of the trial, July of 1986, Bartlett testified he was enrolled in a vocational technical school because he was unable to find a job. While the record does not show the length of time he was enrolled, most school terms are a minimum of nine months. Thus, had he still been working for defendant during those nine months, he would have earned *479 approximately $9,294. This conclusion, we believe, falls within the jurisprudential rule governing proof of lost earnings, i.e. such a claim need not be proved with mathematical certainty, but only by such proof necessary to reasonably establish the claim. Nolan v. Ochello, 433 So.2d 1100, 1104 (La. App. 1st Cir.1983), writ denied, 441 So.2d 210 (La.1983).
Plaintiffs' claim for lost future earnings is denied as there is no evidence to support such a claim.
Likewise, the claim for humiliation, mental anguish, and frustration is also rejected as the record does not adequately support such an award. While the record does show the strain and stress suffered by Mrs. Bartlett, the law is well settled that a person cannot recover in tort for mental anguish resulting from injuries suffered by another. Jenkins v. Ouachita Parish School Board, 459 So.2d 143, 145 (La.App. 2d Cir.1984), writ denied, 462 So.2d 652 (La.1985). Here, the pertinent statute is designed to protect an employee, not the spouse of the employee. Mrs. Bartlett has no right to recover for mental anguish resulting from the wrong committed against her husband.
Plaintiffs' damages total $12,631. As the statute allows the employee to recover triple damages from the employer, plaintiff is awarded $37,893.
In addition, the statute allows for payment of attorney fees and costs of preparing, conducting and appealing a law suit. At trial, plaintiffs' attorney submitted an affidavit establishing he incurred $1,567.15 in cost prior to the three-day trial at which twelve witnesses testified and forty evidentiary items were admitted into the record. In addition to the above costs cited, we believe plaintiff is entitled to $9,000 in attorney fees.
Therefore, for the above and foregoing reasons the judgment of the trial court insofar as it denied the claim of plaintiff, Carolyn G. Bartlett, is affirmed, but in all other respects the judgment is reversed, as there is judgment in favor of Leslie M. Bartlett and against defendant in the amount of FORTY-EIGHT THOUSAND FOUR HUNDRED SIXTY and 15/100 ($48,460.15) DOLLARS, inclusive of attorney fees and pre-trial costs. Defendant is assessed all costs of court both in the trial court and in this court.
AFFIRMED IN PART, REVERSED IN PART, and RENDERED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In applying for a rehearing, defendant, I.D. Reese, d/b/a I.D. Reese Company, contends this court erred in reversing the trial court's ruling on the peremptory exception raising the objection of no cause of action and in further deciding the case on the merits because the record was not complete in that defendant had not presented its case in chief. Additionally, plaintiff seeks a rehearing on the questions of damages and legal interest on the judgment.
Defendant is correct in its assertion that this court was in error in going forward and deciding the case on the merits when the record was not complete. Therefore, any discussion by this court in the original opinion on matters other than the exception is vacated.
In all other respects, the applications for rehearing are denied, and this matter is remanded to the trial court for further proceedings.
NOTES
[1] La.R.S. 30:1074.1 provides:

A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who reports or complains about possible environmental violations.
B. Any employee against whom any action is taken as a result of reporting or complaining of a violation of any state, federal, or local environmental statute, ordinance, or regulation may commence a civil action in a district court of the employee's parish of domicile, and shall recover from his employer triple damages resulting from the action taken against him and all costs of preparing, filing, prosecuting, appealing, or otherwise conducting a law suit, including attorney's fees, if the court finds that Subsection A of this Section has been violated. In addition, the employee shall be entitled to all other civil and criminal remedies available under any other state, federal or local law.
(1) The term "action is taken" shall include firing, layoff, lockout, loss of promotion, loss of raise, loss of present position, loss of job duties or responsibilities, imposition of onerous duties or responsibilities, or any other action or inaction the court finds was taken as a result of a report of an environmental violation.
(2) "Damages" for the purposes of this Section shall include, but not be limited to, lost wages, lost anticipated wage due to wage increse, or loss of anticipated wages which would have resulted from a lost promotion, any property lost as a result of lost wages, lost benefits, and any physical or emotional damages resulting therefrom.
C. This Section shall have no application to any employee who, acting without direction from his employer or his agent, deliberately violates any provision of this Chapter or of the regulations, or permit or license terms and conditions in pursuance thereof.