LOTTINGER, Judge.
This is an appeal by the plaintiff[1] from a judgment rendered after a trial on the merits dismissing his retaliatory discharge action against his employer. The plaintiffs alleged in their petition that Mr. Bartlett was discharged from his employment with I.D. Reese Company as a truck driver for reporting what he thought to be a violation of environmental laws on the part of a chemical company to the Environmental Protection Agency.[2]
The plaintiffs based their action on former La.R.S. 30:1074.1[3] which provided:
“A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, act *197 ing in good faith, who reports or complains about possible environmental violations.
“B. Any employee against whom any action is taken as a result of reporting or complaining of a violation of any state, federal, or local environmental statute, ordinance, or regulation may commence a civil action in a district court of the employee’s parish of domicile, and shall recover from his employer triple damages resulting from the action taken against him and all costs of preparing, filing, prosecuting, appealing, or otherwise conducting a law suit, including attorney’s fees, if the court finds that Subsection A of this Section has been violated. In addition, the employee shall be entitled to all other civil and criminal remedies available under any other state, federal, or local law.
“(1) The term ‘action is taken’ shall include firing, layoff, lockout, loss of promotion, loss of raise, loss of present position, loss of job duties or responsibilities, imposition of onerous duties or responsibilities, or any other action or inaction the court finds was taken as a result of a report of an environmental violation.
“(2) ‘Damages’ for the purposes of this Section shall include, but not be limited to, lost wages, lost anticipated wage due to wage increase, or loss of anticipated wages which would have resulted from a lost promotion, any property lost as a result of lost wages, lost benefits, and any physical or emotional damages resulting therefrom.
“C. This Section shall have no application to any employee who, acting without direction from his employer or his agent, deliberately violates any provision of this Chapter or of the regulations, or permit or license terms and conditions in pursuance thereof.”
The defendant, Mr. I.D. Reese, d/b/a I.D. Reese Company, raised the peremptory exception of no cause of action, alleging that the statute only gives a cause of action to a discharged employee who has reported an environmental violation by his employer, not by a third party. The trial court referred the exception to the merits and plaintiffs proceeded with their case.
After the plaintiffs rested, the defendant renewed his exception of no cause of action and also moved for an involuntary dismissal pursuant to La.Code Civ.P. art. 1672. In support of his motion for involuntary dismissal the defendant asserted that the plaintiffs had not proven by a preponderance of the evidence that he was an employee rather than an independent contractor, nor that he had been discharged by the defendant.
The trial court granted only the exception of no cause of action,[4] and plaintiffs appealed devolutively. We reversed the granting of this exception, holding that the statute does indeed provide a cause of action to an employee discharged for reporting a suspected environmental violation on the part of a third party. Bartlett v. *198 Reese, 526 So.2d 475 (La.App. 1st Cir.), writ denied, 532 So.2d 177 (La. 1988).
In our initial opinion we overlooked the fact that the defendant had not yet presented his defense and went on to decide the case based on the record before us. We held in favor of the plaintiffs and awarded damages. However, upon realizing that the defendant had not yet been afforded an opportunity to present his defense, we granted defendant’s application for rehearing and vacated our opinion except as to the reversal of the trial court’s granting of the exception of no cause of action and remanded the case to the trial court to allow the defendant to present his defense. Bartlett, 526 So.2d at 479.
After the defendant presented his case and rested, the trial court again dismissed the plaintiffs’ suit. The trial judge, in his oral reasons for judgment, characterized his decision as a credibility determination: the plaintiffs’ version of what happened against the defendant’s version. The trial judge believed the defendant and accepted his version of the facts.
It is well settled that credibility determinations and findings of fact by the trial judge are given great deference and will not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This is so because only the finder of fact has the opportunity to observe the demeanor of the witness and listen to the variations in the pitch and tone of his voice that bear so heavily on determinations of credibility. Rosell; Arceneaux. However, where documents or other objective evidence contradict the testimony of the witness(es) believed by the finder of fact, or if that testimony itself is so implausible or internally inconsistent to such an extent that a reasonable finder of fact would not believe the witness’ testimony, then such deference is not warranted and the appellate court may, in such circumstances, find manifest error even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d at 844-45; Reilly v. Dynamic Exploration, Inc., 558 So.2d 1249, 1253 (La.App. 1st Cir.), writ granted, 561 So.2d 108 (La. 1990).
FACTS
The plaintiff, Leslie M. Bartlett, was working as a truck driver for the I.D. Reese Company in Baton Rouge, Louisiana, on June 30, 1983. The I.D. Reese Company is a trucking company that leases trucks and provides drivers exclusively to Agway Systems, Inc. and Blue Flash Express, transport companies which are both owned by Mr. Leonard Aguillard. Agway and Blue Flash have contracts with local chemical plants for the transportation of various chemicals, compounds, and equipment.
On June 30, 1983, Mr. Bartlett delivered a load of sulfuric acid to the Formosa Plastics plant. Upon arriving at the sulfuric acid unloading area and exiting his truck, he noticed a strong odor of chlorine and that some type of gas was bubbling up through the few inches of standing water which was present in the area. The chlorine fumes irritated his eyes and lungs and made working in the area very uncomfortable.
After taking a sample of the sulfuric acid from his truck so that it could be analyzed by Formosa personnel prior to unloading, Mr. Bartlett entered the control room and complained about the strong fumes outside. He was told that there was chlorine in the sewer and that nothing could be done about it. He was then ordered out of the control room, and after a brief and less than amicable exchange of words with the control room personnel, returned to his truck, and once the sample had been analyzed, unloaded the acid. Mr. Bartlett was at the Formosa plant for a total of one and one half hours, most of which time he was exposed to the chlorine gas.
Upon exiting the plant, Mr. Bartlett stopped at a pay phone just outside the main gate and called the Department of Natural Resources, Office of Environmental Affairs to report the strong chlorine fumes at the plant, which he considered to be a possible environmental violation. He talked to Mr. Greg Gasperecz at the Office of Environmental Affairs, who testified *199 that Mr. Bartlett was concerned about the confidentiality of his call and did not divulge his name until he had been assured by Mr. Gasperecz that his identity, and the fact that he had made a complaint, would not be disclosed. Mr. Gasperecz testified that he got the impression that the reason Mr. Bartlett was concerned about confidentiality was that he was concerned about his job security, and that this is a legitimate concern and one that his office routinely honors.
Mr. Bartlett then returned to the I.D. Reese Company truck terminal, and after a brief exchange with Mr. Reese, left to begin a previously scheduled vacation. Just exactly what was said during the exchange between Mr. Bartlett and Mr. Reese on the afternoon of June 30, 1983, after Mr. Bartlett had returned from the Formosa plant, as well as the subsequent events, were disputed factual issues at trial.
Mr. Bartlett’s version is that he told Mr. Reese about the chlorine fumes, and that he did not want to haul sulfuric acid to Formosa any more. According to Mr. Bartlett, that was the extent of the conversation, and he said nothing about calling the “EPA” or quitting; only that he did not want to haul sulfuric acid to Formosa anymore.
Mr. Bartlett testified that his reason for not wanting to haul sulfuric acid to Formosa anymore was a general lack of proper safety equipment at the sulfuric acid unloading area and that the chlorine gas was the “straw that broke the camel’s back.” Mr. Bartlett introduced evidence that proved to our satisfaction that Mr. Reese had enough other work besides hauling sulfuric acid to Formosa to keep Mr. Bartlett busy.[5]
Mr. Reese, on the other hand, testified that Mr. Bartlett told him that he had tried to call the “EPA” from the control room at Formosa to report the chlorine fumes, but that he was ordered out of the control room, and that he then called the “EPA” from a pay phone to report the situation. Mr. Reese further testified that Mr. Bartlett told him that he no longer wanted to go back to Formosa, nor did he wish to continue hauling hazardous materials and if that was all Mr. Reese had for him to haul he was going to have to quit. Mr. Reese also testified that Mr. Bartlett told him he was going to Georgia to look for another job. Mr. Reese claims that this was the last time he spoke to or saw Mr. Bartlett up until the time his deposition was taken pursuant to this litigation.
Mr. Bartlett testified that after talking to Mr. Reese on the afternoon of June 30, 1983, he went on vacation to Arkansas and returned to Baton Rouge early on the morning of July 5th. Mr. Bartlett testified that he spoke with Mr. Reese on the telephone on the morning of July 5, 1983, and told him that he was back from his vacation and inquired about loads that needed to be hauled. He testified that Mr. Reese immediately began asking him if he had called the “EPA” about the chlorine incident at Formosa and that Mr. Reese told him that because of the incident Agway had almost lost its contract with Formosa. Mr. Bartlett testified at this point that he denied calling the “EPA” because he feared that he might lose his job.
Mr. Bartlett testified that Mr. Reese then told him that no loads were available, and as was customary, he went to the I.D. Reese Company terminal to wait for a load to haul. Mr. Bartlett’s testimony was that after waiting around for a few hours, Mr. Reese told him that there was not enough work to keep him around anymore. Mr. Bartlett then realized that he had been fired and had a strong suspicion that his call to the “EPA” was the reason.
Mr. Bartlett testified that within an hour of leaving the I.D. Reese Company termi *200 nal on July 5, 1983, he made a second call to Mr. Gasperecz to find out if his name had been given out or if it had otherwise been made public that he made a complaint about Formosa on June 30, 1983. Mr. Gas-perecz confirmed this second call and testified that although he did not remember the exact date, that it was not the same day, nor the day following, the first call. Mr. Gasperecz testified that in this second call Mr. Bartlett told him that he had lost his job and that he had a strong suspicion that his call to report the chlorine gas was the reason, and that he inquired about the confidentiality of the first call. Mr. Gasperecz assured him that his identity had been kept confidential and informed him that if he was indeed fired for reporting the chlorine gas that he should contact the attorney general because such a discharge was a violation of law.
Mr. Bartlett then began looking for another job, and after a few days was offered a job driving a truck in Georgia where he and his wife had previously lived. After Mr. Bartlett and his wife arrived in Georgia, the prospective employer informed them that he had decided not to hire anyone and would instead do the work himself.
Thereafter, Mr. Bartlett obtained another truck driving job where he worked four to six weeks driving a truck cross-country for a California company. That job ended when he had an accident, whereupon he and his wife decided to return to Baton Rouge to seek legal recourse against the defendant.
Because of the alleged dismissal, the Bartletts were forced to back out of an agreement they had signed to purchase a home in Baton Rouge. They then spent a large part of the deposit on moving to Georgia and returning. Mrs. Bartlett was able to return to her job as a registered nurse in Baton Rouge, but lost about one month of wages.
Mr. Bartlett has since worked at a variety of jobs and at the time of the initial trial was attending Baton Rouge Vocational Technical Body and Fender School. Following several jobs doing body and fender work, Mr. Bartlett started doing turnaround work at chemical plants; and at the time of the trial upon remand from this court’s previous opinion he was doing turnaround work for UMC.
ACTION OF THE TRIAL COURT
In our first opinion in this case we held that the plaintiff had carried his burden of proof; and although that part of the opinion was vacated upon rehearing and the case remanded to give the defendant an opportunity to put on his defense, we still adhere to the view that the plaintiff carried his initial burden of proof. See, Bartlett, 526 So.2d 475. Therefore, the only issue on remand was whether the defendant sufficiently rebutted the plaintiffs case so as to destroy the plaintiffs preponderance of proof.
The essence of defendant’s case was that the plaintiff quit voluntarily and was not fired. The trial court made a credibility determination and chose to believe the defendant, accepting his version of the facts. As we have previously pointed out, such a determination by the trial court must be given great deference, and will not be reversed unless the trial court’s determination was clearly erroneous in light of either the existence of contradictory documentary or other objective evidence, or the highly implausible or internally inconsistent nature of the testimony itself. Rosell; Reilly.
In his oral reasons for judgment the trial court stated:
“This case boils down simply to an issue of credibility at this stage. One can take all of the other evidence in this case and set it aside, and throw it away because the primary determining incident in this case is what happened on June the 30th. There are two witnesses to what happened. Those witnesses are the plaintiff and the defendant.”
We do not agree that the only pertinent witnesses to what occurred on June 30, 1983, are the plaintiff and the defendant. While they are certainly two of the more important witnesses, and the only witnesses to their conversation on that date, there *201 were several other witnesses who shed light on what occurred on that day, one who we consider to be very important. That witness was Mr. Greg Gasperecz. He was the only neutral witness[6] to testify about the events of June 30, 1983, and his testimony seems to have been completely overlooked by the trial court.
Mr. Gasperecz testified unequivocally that the plaintiff called him on June 30, 1983, and that Mr. Bartlett was concerned about the confidentiality of his call and did not divulge his name until he had been assured that it would remain confidential. Mr. Gasperecz was of the opinion that Mr. Bartlett was concerned about his job security when he asked that his name be kept confidential. Mr. Gasperecz testified that he received a second call from Mr. Bartlett at least several days later, in which Mr. Bartlett told him that he had lost his job, and suspected it was because of his first call, and inquired if his name had been kept confidential.
Yet Mr. Reese, whom the trial court believed, testified that Mr. Bartlett told him on June 30, 1983, upon his return from Formosa, not only that he had just called the “EPA”, but that he first attempted to call them from the control room at the Formosa plant, but was ordered out of the control room before he could complete the call. This is not consistent with Mr. Gas-perecz’s testimony that the plaintiff wished his name to remain confidential. If Mr. Bartlett wished his name to remain confidential, as he told Mr. Gasperecz, it does not seem likely that he would have made the call from the Formosa control room and then rushed back to tell Mr. Reese about it. That makes Mr. Reese’s version of the facts highly implausible unless Mr. Gasper-ecz’s testimony is disbelieved. Therefore, in accepting Mr. Reese’s version of the facts as true, the trial court not only rejected the testimony of Mr. Bartlett, but also implicitly rejected the testimony of Mr. Gasperecz, who was the only neutral, or unbiased witness to testify concerning the events surrounding the chlorine leak and whose testimony was completely uncontra-dicted.
There are many internal inconsistencies in the defendant’s testimony that not only tend to undermine his credibility, but support the plaintiff’s version of the facts and point to an economic incentive for the defendant to retaliate against the plaintiff.
Mr. Reese, at his deposition, denied speaking to anyone from either Formosa or Agway on June 30, 1983, concerning the chlorine gas incident at the Formosa plant. Later, in his initial trial testimony, (which was subsequent to Mr. Aguillard’s deposition testimony that he called Mr. Reese on June 30, 1983) Mr. Reese testified that he did in fact receive a phone call from Mr. Aguillard on June 30, 1983, concerning the incident at Formosa.
Mr. Reese also testified at trial that in his phone conversation with Mr. Aguillard on the afternoon of June 30, 1983, that Mr. Aguillard told him that someone from Formosa had called and said that the plaintiff was barred from the Formosa plant and not to send him back. This testimony was confirmed by the defendant’s wife, who testified that Mr. Aguillard called and said that Mr. Bartlett should not go back to Formosa. Mr. Reese later recanted this testimony and denied that Mr. Aguillard had told him this.
Mr. Reese also testified.at trial that Mr. Aguillard told him on June 30, 1983, that Agway had almost lost its contract with Formosa because of Mr. Bartlett’s report to the “EPA”. This is consistent with Mr. Bartlett’s testimony that Mr. Reese mentioned this to him on July 5, 1983. Mr. Reese again later recanted this testimony, and denied that Mr. Aguillard had told him that Agway almost lost the Formosa contract.
Finally, several other facts make Mr. Reese’s version of what happened highly implausible in our opinion. Sometime in *202 1982 or 1983, prior to the events which formed the basis for this suit, Mr. Reese paid twenty-five thousand dollars as clean up costs to the “EPA”, for an acid spill or discharge which occurred at the I.D. Reese Company terminal. All of Mr. Reese’s employees, including the plaintiff, knew about this. It seems unlikely to us that the plaintiff, knowing of this prior incident, would have rushed back to Mr. Reese to tell him that he had just reported the incident at Formosa to the “EPA”.
Also, on June 3, 1983, the Bartletts had agreed to purchase a house in the Baton Rouge area. At the time the incident which formed a basis for this suit occurred, they were still in the process of getting their financing approved. As a result of Mr. Bartlett losing his job, their financing was not approved and they were unable to purchase the house. It seems unlikely to us that the plaintiff would have quit his job at a time when he was preparing to borrow a substantial sum of money for the purchase of a house.
There is also documentary evidence which tends to support the plaintiffs rather than the defendant’s version of the facts. The defendant’s payroll records and dispatch sheets list Mr. Bartlett as being on “vacation” from July 1st through 7th. The defendant explained that these entries were made prior to June 30, 1983. Nonetheless these entries tend to support the plaintiff’s rather than the defendant’s version of the facts.
In light of the many internal inconsistencies in Mr. Reese’s testimony, and the highly implausible nature of that testimony considering: the uncontradicted testimony of Mr. Gasperecz, a neutral witness; the fact that the plaintiff was in the process of securing financing to purchase a house at the time that he allegedly quit his job; the plaintiff’s knowledge that Mr. Reese had previously been fined by the “EPA”; the documentation evincing that Mr. Bartlett was on his vacation at the time when Mr. Reese said that he had quit; and the evidence of a financial incentive for Mr. Reese to fire Mr. Bartlett (i.e. Formosa’s threat to cancel Agway’s contract); we hold that it was manifest error for the trial court to accept Mr. Reese’s testimony and version of the facts as true.
We find that the plaintiff was indeed discharged from his employment with the I.D. Reese Company in retaliation for having reported what he perceived to be an environmental violation at the Formosa Plastics plant on June 30, 1983.
DAMAGES AND ATTORNEY’S FEES
We have previously considered plaintiff’s damages[7] which we found to total $12,-631.00. Bartlett, 526 So.2d at 478-79. As the statute provides for triple damages, plaintiff is entitled to $37,893.00. We hereby adopt by reference and reinstate that portion of our earlier opinion dealing with plaintiff’s damages. See, Bartlett 526 So.2d at 478-79.
The statute also provides for payment of attorney’s fees and costs of preparing, conducting and appealing a law suit. At the initial trial, after which the plaintiff rested, plaintiff’s attorney submitted an affidavit establishing that he incurred $1,567.15 in costs up to that time. At the trial upon remand, during which the defendant presented his case, the plaintiff’s attorney submitted an affidavit establishing that he incurred an additional $74.38 in costs.
The plaintiff assigns as error the fact that the trial court refused to admit his contingency fee contract into evidence during the trial upon remand. The plaintiff cites a Louisiana Supreme Court case that was handed down subsequent to the plaintiff’s presentation of his case which provides that a contingent fee contract may *203 be considered when setting attorney’s fees; and complains that while it was within the trial court’s discretion to allow this additional evidence after the plaintiff had rested, that the trial court felt that it was not within his discretion and therefore refused to admit it.
After reviewing the pertinent part of the trial transcript, we are of the opinion that the trial court did in fact exercise his discretion in not allowing the contract into evidence, and we cannot say that he was manifestly wrong. Therefore, this assignment of error is without merit.
In our initial opinion we awarded $9,000.00 in attorney’s fees following three days of trial and an appeal. We are still of the opinion that this is an adequate award for the amount of work performed up until that point. At the trial upon remand, the plaintiff’s attorney submitted an affidavit establishing that he was entitled to $1,160.00 in attorney’s fees from the time of our first opinion up until the trial on remand. Finally, we feel that following the two day trial on remand and the instant appeal, the plaintiff is entitled to an additional $5,000.00 in attorney’s fees.
Therefore, for the above and foregoing reasons, the judgment of the trial court insofar as it dismissed the claim of Leslie M. Bartlett is hereby reversed, and judgment is hereby rendered in favor of Leslie M. Bartlett and against I.D. Reese d/b/a I.D. Reese Company in the sum of $54,-694.53 inclusive of attorney fees and the costs of bringing this action, together with interest from date of judicial demand.
Defendant is assessed all costs of court both in the trial court and in this court.
REVERSED AND RENDERED.
CARTER, J., concurs.

. Leslie M. Bartlett and Carolyn G. Bartlett are the plaintiffs in this case. However, only Mr. Bartlett has appealed from the judgment below. Therefore, that judgment is now definitive as to Mrs. Bartlett.

. Mr. Bartlett initially thought that he had called the Environmental Protection Agency, which is a Federal agency. Mr. Bartlett in fact called the Department of Natural Resources, Office of Environmental Affairs, which is a state agency. Since it is clear that he did make the call, the fact that he got confused about the name of the agency he called is irrelevant. As all of the parties to this suit have continued to refer to the "EPA” when discussing this agency, we will also use the term in this opinion.

.Former La.R.S. 30:1074.1 which was in effect at the time of plaintiff’s alleged retaliatory discharge was redesignated as La.R.S. 30:2027 after the 1987 regular session of the legislature. The text of the statute remained unchanged.

. From the trial judge’s oral reasons for judgment it is clear that in addition to granting the exception of no cause of action, the trial judge intended, in the alternative, to grant the motion for involuntary dismissal. He found that although the plaintiff was an employee of the defendant, he had not proven that he had been discharged. However, the written judgment granted only the exception of no cause of action and was silent as to the motion for involuntary dismissal. Nor was any reference made in the written judgment to the oral reasons assigned by the trial judge.
A trial judge's oral reasons for judgment do not constitute part of the judgment unless specifically incorporated into the written judgment. Ladnier v. Villafranco, 525 So.2d 1191 (La.App. 5th Cir.1988); Dinkins v. Broussard, 196 So.2d 636 (La.App. 1st Cir.1967).
Silence in a judgment as to any part of a demand made or issue raised by the pleadings and on which evidence is introduced, is considered as a rejection of that demand. Robinson v. City of Baton Rouge, 566 So.2d 415 (La. App. 1st Cir.1990); Finwall v. Union Oil Company of California, IMCO, 551 So.2d 674 (La.App. 1st Cir.1989); Day v. Warren, 524 So.2d 1383 (La.App. 1st Cir.1988); Webster v. Terrebonne Parish Council, 515 So.2d 461 (La.App. 1st Cir. 1987), writ denied, 516 So.2d 368 (La.1988).
Therefore the judgment sustaining the exception of no cause of action must be construed as rejecting defendant’s motion for involuntary dismissal even though it is clear that the trial judge did not intend to do so. See, Finwall, 551 So.2d at 676.

. A few months prior to this incident, Mr. Bartlett broke his hand and it was in a cast for approximately one month. Because of the cast, he could not wear the rubber safety gloves required when loading and unloading sulfuric acid, and as a consequence, did not haul any during this time. Nevertheless, I.D. Reese payroll records and dispatch sheets indicate that Mr. Bartlett's workload did not diminish during this period, and he earned substantially the same amount of money as he normally would have if he had been hauling sulfuric acid along with the other chemicals transported by I.D. Reese Company.

. All of the witnesses who testified about the June 30, 1983, incident at Formosa and the subsequent events were either the Bartlett’s friends and acquaintances or Mr. Reese's business associates, with the exception of Mr. Greg Gasperecz. For that reason, and because his testimony was uncontradicted, we would have accepted Mr. Gasperecz’s testimony as true.

. In our previous opinion on damages, we denied Mrs. Bartlett's claim for mental anguish, stating that a person cannot recover in tort for mental anguish resulting from injury to another. In light of the recent pronouncement of the Louisiana Supreme Court in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La. 1990), this is no longer an entirely correct statement of the law. However, since Mrs. Bartlett has not appealed the judgment of the trial court dismissing her suit, we express no opinion as to her entitlement to damages for mental anguish under the instant facts, and the result of our previous opinion is correct.