583 So.2d 921 (1991)
Eldon CHERAMIE
v.
J. WAYNE PLAISANCE, INC. and T. Baker Smith & Son, Inc., as Corporate Entities and Joint Venturers.
No. 90 CA 1539.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Writ Granted November 1, 1991.
*922 Michael Osborne and Christopher Gobert, New Orleans, for plaintiff and appellant, Eldon Cheramie.
Robert L. Picou Jr., Houma, for defendants and appellees, J. Wayne Plaisance and T. Baker Smith & Son, Inc.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by the plaintiff from a judgment dismissing his La.R.S. 30:2027 retaliatory discharge suit against his former employer. The plaintiff, Eldon Cheramie, alleged that he was fired by his employer, J. Wayne Plaisance, Inc., for reporting possible environmental law violations. After a trial on the merits, the trial court dismissed the plaintiff's suit, finding that the plaintiff had failed to prove that he was fired for reporting possible environmental violations, but rather was fired after he refused to do the work assigned to him.

FACTS AND PROCEDURAL HISTORY
In March of 1987, the plaintiff's employer, J. Wayne Plaisance, Inc., and T. Baker Smith & Son, Inc., formed a joint venture and contracted with the Louisiana Department of Transportation and Development to do the basic engineering, land surveying, and other work necessary to develop plans and specifications for the stabilization of the Isle Dernieres Barrier Island System in Terrebonne Parish from Raccoon Point to Wine Island. The ultimate goal of the project was to restore and preserve the island chain from continuing erosion.
The plaintiff was employed by J. Wayne Plaisance as a rod man on a survey crew and was assigned to work for the joint venture on the project in April of 1987. The first phase of the project was to do the initial surveys of the three islands in the chain, referred to at trial as the eastern, central, and western isles. This involved the actual surveying and setting of traverse points on all of the islands. To accomplish these tasks efficiently, the survey crews, one of which plaintiff was a member, used three and four-wheeled all-terrain vehicles for transportation on the islands.
The western island (Raccoon Point) is the nesting site for hundreds of thousands of sea birds of various species, including at least one nesting pair of brown pelicans. At the time the surveying operations were commenced, this island was literally covered with nesting birds, and most of the nests contained either young birds or eggs.
It was alleged that a large number of eggs and young birds were crushed by the survey crews as they traversed the island in the all terrain vehicles. The pair of brown pelicans, a protected species in Louisiana, abandoned their nest and the eggs were eaten by predators sometime after *923 the surveying operations began. Whether or not the surveying activities actually caused the abandonment of the brown pelican nest is immaterial for the purposes of this suit.
In late May of 1987, the plaintiff, disturbed by these activities, contacted state wildlife officials and complained of the destruction of the bird nests. Thereafter, the U.S. Fish and Wildlife Service and the Louisiana Department of Wildlife and Fisheries investigated and determined that the brown pelican nest had been abandoned and the eggs eaten, and that a large number of other sea bird's nests had been crushed by the all terrain vehicles.
On Friday, May 29, 1987, the Louisiana Department of Wildlife and Fisheries contacted the joint venture and requested that it cease all surveying activities on the western island until the damages could be assessed. The joint venture agreed and a meeting of all interested parties was scheduled for June 5, 1987, to decide what course of action should be taken.
Over the weekend, the joint venture decided that it would nevertheless return its crews to the western island on Monday, June 1, 1987, and complete the survey of that island on foot as quickly as possible. On Monday morning, the joint venture mobilized all of its surveying crews, including the ones previously working on the other two islands, and instructed them that they were to complete the work on the western island as soon as possible, but without using the all terrain vehicles.
The plaintiff objected to this and refused to go to the western island with the rest of the crews. He told his superiors that he felt it was wrong to continue to disturb the nesting birds and probably illegal as well.[1] He asked that he be given a different assignment but was told there was none. The plaintiff was told he was fired at that time but he remained on the quarter boat being used as the base of operations until he could be transported back to shore later that day.
Less than two hours after the crews arrived on the island, and before the plaintiff had been transported to shore, the joint venture was ordered by the Louisiana Department of Wildlife and Fisheries to remove its crews from the western island. The crews were then reassigned to continue the surveying of the central and eastern islands. It wasn't until after the nesting season, sometime in the fall of 1987, that the joint venture was allowed to complete its surveying operations on the western island.
The plaintiff filed this suit against J. Wayne Plaisance, Inc., T. Baker Smith & Son, Inc., and the joint venture on December 16, 1987, alleging that he was fired for reporting or complaining of possible environmental law violations. The plaintiff contends that his termination from employment was a violation of La.R.S. 30:2027 and that he is entitled to triple damages, costs, and attorney fees under that statute.

LAW
Louisiana is an "at will" jurisdiction, in which an employer can discharge an employee for any reason or for no reason, with the exception that the employee's constitutional or statutory rights cannot be violated. La.Civ.Code art. 2747; Gil v. Metal Service Corporation, 412 So.2d 706 (La.App. 4th Cir.1982), writ denied, 414 So.2d 379 (La.1982). An employee may even be lawfully discharged for refusing to perform an unlawful act, as long as the termination by the employer does not violate the employee's constitutional rights, or any applicable statutes. Gil, 412 So.2d 706.
The only constitutional or statutory violation alleged by the plaintiff in this case is a violation of La.R.S. 30:2027. This statute, entitled "Environmental violations reported by employees; reprisals prohibited," provides:
A. No firm, business, private or public corporation, partnership, individual *924 employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who reports or complains about possible environmental violations.
B. Any employee against whom any action is taken as a result of reporting or complaining of a violation of any state, federal, or local environmental statute, ordinance, or regulation may commence a civil action in a district court of the employee's parish of domicile, and shall recover from his employer triple damages resulting from the action taken against him and all costs of preparing, filing, prosecuting, appealing, or otherwise conducting a law suit, including attorney's fees, if the court finds that Subsection A of this Section has been violated. In addition, the employee shall be entitled to all other civil and criminal remedies available under any other state, federal, or local law.
(1) The term "action is taken" shall include firing, layoff, lockout, loss of promotion, loss of raise, loss of present position, loss of job duties or responsibilities, imposition of onerous duties or responsibilities, or any other action or inaction the court finds was taken as a result of a report of an environmental violation.
(2) "Damages" for the purposes of this Section shall include, but not be limited to, lost wages, lost anticipated wage due to wage increase, or loss of anticipated wages which would have resulted from a lost promotion, any property lost as a result of lost wages, lost benefits, and any physical or emotional damages resulting therefrom.
C. This Section shall have no application to any employee who, acting without direction from his employer or his agent, deliberately violates any provision of this Subtitle or of the regulations, or permit or license terms and conditions in pursuance thereof.
After a trial on the merits the trial court dismissed the plaintiff's suit, holding that the plaintiff had not proven that the defendants' motivation for firing him was the reporting of their activities to the Louisiana Department of Wildlife and Fisheries. The trial court found that the defendants were unaware that it was the plaintiff who reported them and held that the plaintiff was fired for refusing to go to work, a valid reason for termination.
The plaintiff has appealed, asserting that the trial court erred in interpreting the statute to require knowledge by the employer of a report or complaint to a governmental agency. The plaintiff contends that the statute is violated even where an employee complains of possible environmental violations to his superiors and is fired for doing so.
Even if the plaintiff's argument is correct, and La.R.S. 30:2027 does protect an employee from retaliation for complaining to his employer about possible environmental violations, it is clear that it does not protect him from reprisals for refusing to do his job. Therefore, absent a reversal of the trial court's finding that the plaintiff was fired for refusing to do the work he was assigned, La.R.S. 30:2027 affords him no relief.
However, for the reasons set out below, we hold that the acts of the defendants about which the plaintiff complained were not "possible environmental violations" within the meaning of La.R.S. 30:2027, and therefore the statute has not been violated. In light of this holding we express no opinion as to whom a report or complaint must be made under the statute, nor do we decide whether the trial court's finding concerning the reason the plaintiff was fired was correct.
La.R.S. 30:2027 is a part of the Louisiana Environmental Quality Act. La.R.S. 30:2001-2423. The policy sought to be implemented by this act, and its purposes, are set out in La.R.S. 30:2002 and La.R.S. 30:2003 which provide, in pertinent part, as follows:
§ 2002 Findings and declaration of policy
The legislature finds and declares that:

*925 (1) The maintenance of a healthful and safe environment for the people of Louisiana is a matter of critical state concern.
(2) It is necessary and desirable for the protection of the public welfare and property of the people of Louisiana that there be maintained at all times, both now and in the future, clean air and water resources, preservation of the scenic beauty and ecological regimen of certain free flowing streams, and strictly enforced programs for the safe and sanitary disposal of solid waste, for the management of hazardous waste, for the control of hazards due to natural and man-made radiation, considering sound policies regarding employment and economic development in Louisiana.
(3) It is necessary and essential to the success of the regulatory program established in this Subtitle that the enforcement procedures include unannounced regular inspections of all facilities which may be regulated by this Subtitle or any facility in violation of this Subtitle.
§ 2003 Purposes
A. The maintenance of a healthful and safe environment in Louisiana requires regulation and control over the areas of water quality, air quality, solid and hazardous waste, scenic rivers and streams, and radiation.
The remainder of the Environmental Quality Act deals with the regulation and control of all types of pollutants. Chapter Two, in which La.R.S. 30:2027 is contained, creates the Department of Environmental Quality and empowers it to enact and implement standards and regulations relating to the discharge into the environment of all types of pollutants. Civil and criminal penalties for violations of the act and regulations promulgated pursuant to it are also established in Chapter Two.
The Louisiana Environmental Quality Act in no way relates to or regulates any activities involving endangered or threatened species of animals. It deals only with matters involving the regulation of the discharge of pollutants into the environment. The conduct of the defendants that the plaintiff reported or complained about, on the other hand, was an alleged violation of statutes that deal solely with the protection of endangered or threatened species of animals. La.R.S. 56:1904(F)(1); 16 U.S.C. § 701 et seq. These statutes do not in any way relate to the regulation of the discharge of pollutants into the environment.
The actions of the defendants of which the plaintiff complained were not "possible environmental violations" within the meaning of La.R.S. 30:2027, as that statute was obviously intended to deal with violations of the type proscribed under the Louisiana Environmental Quality Act, i.e. the discharge of pollutants into the environment, and not violations of other laws of an environmental nature such as those protecting wildlife. Therefore, La.R.S. 30:2027 is not applicable to the instant facts and the result reached by the trial court is correct.
Therefore, for the above and foregoing reasons, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the trial court is hereby affirmed. The cost of this appeal is to be borne by plaintiff.
AFFIRMED.
SHORTESS, J., dissents.
SHORTESS, Judge, dissenting.
I disagree with the majority's opinion that LSA-R.S. 30:2027 protects only those employees who report or complain of the discharge of pollutants. In Bartlett v. Reese, 526 So.2d 475 (La.App. 1st Cir.1988), this court held that the purpose of this statute is dictated by the intent of the legislature. Act 280 of 1981, which enacted this statute, stated its purpose was "[t]o amend Title 30 ... to prohibit reprisals against employees who report environmental violations or make complaints about such violations...." The statute itself contains broad language providing a remedy to "any employee against whom any action is taken as a result of reporting or complaining of a violation of any state, federal, or local environmental statute, ordinance, or regulation...."
The majority holds that because the environmental statutes apparently violated by defendant are not found in Title 30, and *926 because LSA-R.S. 30:2003(A) enumerates the areas in which regulation and control by the state are required to maintain a "healthful and safe environment," an employee discharged for complaining of a violation of Title 56 or federal environmental statutes protecting wildlife has no remedy under R.S. 30:2027. LSA R.S. 30:2003(B), however, states that in order to achieve the goals of the Environmental Quality Act, "it is necessary to provide for comprehensive policies on a statewide basis to unify, coordinate, and implement programs to provide for the most advantageous use of the resources of the state and to preserve, protect, and enhance the quality of the environment in Louisiana." Surely the preservation and protection of the environment in Louisiana includes the preservation and protection of our once abundant wildlife.
Had the legislature intended to restrict R.S. 30:3027 to violations of Title 30, it could have used the language found in R.S. 30:3026, which provides for citizen suits for environment violations. That statute permits such suits only for a "violation of this Subtitle or the regulations promulgated hereunder." No such restrictive language is found in R.S. 30:2027.
The issue of whether the trial court properly held that Cheramie could recover under R.S. 30:2027 only if he proved he was fired because his employer was aware he had reported the environmental violations is not reached. I would reverse the trial court.
The statute contains the language "reporting or complaining." In addition to reporting his employer's activities to the Department of Wildlife and Fisheries, it is undisputed that Cheramie complained to both his supervisor and his employer about the destruction of the nesting grounds. These complaints were made both before he was fired and on the day he was fired. Cheramie was fired because he exercised his constitutional right to free speech by telling his supervisor and employer that the activities they were about to engage in were illegal.
The majority cites Gil v. Metal Service Corp., 412 So.2d 706 (La.App. 4th Cir.), writ denied, 414 So.2d 379 (La.1982), for the proposition that an employee may be lawfully discharged for any reason, even for refusing to perform an unlawful act. The court notes in Gil, however, that an employee may not be terminated for the exercise of a constitutionally protected right, such as the right to free speech.[1]
In my opinion, the trial court incorrectly held that knowledge by the employer of a formal report of environmental violations was necessary to trigger the protection of LSA-R.S. 30:3027 and in holding that Cheramie's employer had "a valid reason for termination acceptable to most employers."
I respectfully dissent.
NOTES
[1] The trial court found that the plaintiff's employer did not know that the plaintiff had complained to state wildlife officials about the destruction of the bird nests until sometime after he had been fired. This finding is not manifestly erroneous.
[1] See Sheet Metal Workers' International Assn. v. Lynn, 109 S.Ct. 639 (1989).