745 So.2d 1198 (1999)
Henry CHIRO
v.
HARMONY CORPORATION.
No. 99 CA 0453.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
Writ Denied January 28, 2000.
A. Wayne Stewart, Denham Springs, LA, for plaintiff/appellant, Henry Chiro.
Thomas E. Balhoff, Baton Rouge, LA, for defendant/appellee, Harmony Corporation.
*1199 BEFORE: WHIPPLE, FITZSIMMONS and KUHN, JJ.
WHIPPLE, J.
Plaintiff, Henry Chiro, appeals the trial court's judgment granting defendant's motion for summary judgment and dismissing plaintiff's petition for damages brought pursuant to LSA-R.S. 30:2027, the Louisiana Environmental Whistle Blower Statute. For the following reasons, we affirm.

FACTS AND PROCEDURAL BACKGROUND
Plaintiff, Chiro, was employed by defendant, Harmony Corporation, as a pipefitter general foreman and was working at the Georgia-Gulf plant in Plaquemine, Louisiana on September 25, 1996 when he and numerous workers at the plant were exposed to a then unidentified chemical. After the chemical release, Georgia-Gulf employees barricaded with red tape the area suspected of chemical contamination in the plant. Within a week, OSHA and Georgia-Gulf began an investigation of the contaminated area, and samples of the material were taken for analysis. In late October 1996, with the aid of the U.S. Army, OSHA identified the chemical involved in the accidental release and exposure as a mustard gas agent. On October 31, 1996, workers at the Georgia-Gulf plant were informed by memorandum from Georgia-Gulf and OSHA of the identification of the compound.
Chiro continued working at the Georgia-Gulf plant and began to notice that employees working in the designated "safe area" of the plant were displaying symptoms of chemical exposure. In December 1996, Chiro and approximately 20-25 other employees voluntarily quit their employment with Harmony Corporation. Chiro later testified by deposition that he left his employment as a means of protesting the unsafe work environment and the alleged failure of Harmony to inform workers of the continued chemical exposure in the area of the plant labeled a "safe area."
In January 1997, Chiro applied for another job with Harmony which would have involved working in a plant in Geismar, Louisiana. However, he was not hired by Harmony for the job. Chiro claimed he was told he was not being hired because he had walked off the job at the Georgia-Gulf plant. Harmony eventually did hire Chiro, who began work in June 1997 at a Harmony job in Reserve, Louisiana. At the Reserve job, Chiro was paid a lower hourly rate than earned on previous jobs with Harmony.[1]
Chiro filed suit against Harmony in September 1997 alleging that Harmony's (1) continued refusal to rehire him until June 1997, and (2) rehiring him at a lower hourly wage than that paid in his previous employment constituted "act[ing] in a retaliatory manner" pursuant to LSA-R.S. 30:2027. Chiro claimed that Harmony's initial refusal to rehire him and subsequent rehiring at a lower pay rate occurred in response to his attempts to investigate and/or report the earlier violations of environmental regulations by Georgia-Gulf and Harmony. Accordingly, he sought damages for lost wages and loss of incremental wage increases, plus statutory penalties and attorney fees.
Defendant answered and denied liability to plaintiff under the Environmental Whistle Blower Statute. Specifically, Harmony denied that Chiro's claim met the requirements of LSA-R.S. 30:2027, filed a motion for summary judgment and attached Chiro's deposition as evidence. In its memorandum in support, Harmony argued that Chiro's testimony was insufficient to establish the elements required to state a claim and prevail under the statute.
In response to defendant's motion for summary judgment, Chiro filed an opposing *1200 affidavit wherein he attested (1) that the facts of the mustard gas incident at the Georgia-Gulf plant as outlined by defendant were essentially correct, (2) that he quit his employment with Harmony on December 6, 1996 as a form of protest or complaining, (3) that he had been removed from the list of former employees who could be rehired, and (4) that this removal from the hiring list was in retaliation for quitting his job with Harmony, supplying samples of the mustard gas agents to his attorneys, and appearing on Baton Rouge television news and revealing that plant workers in the designated "safe areas" were being injured.
However, in his deposition, Chiro testified that he had been able to freely talk with the OSHA investigators about the investigation at the plant on many occasions; that he had spoken in person with OSHA investigators at the OSHA office in Baton Rouge; and that no one from Georgia-Gulf or Harmony had discouraged or obstructed his inquiries.
After a hearing on the motion, the trial court granted defendant's motion for summary judgment and dismissed plaintiffs suit with prejudice. In its written reasons for judgment, the court concluded that Chiro was not an "employee" within the meaning of LSA-R.S. 30:2027 because the alleged improper treatment by Harmony occurred only after Chiro had voluntarily quit his job with Harmony. Therefore, the trial court concluded, plaintiff had failed to produce the necessary factual support for one of the essential elements required to establish a claim under the statute.[2] Although our reasons differ from those articulated by the trial court, concluding that the judgment is correct, we affirm the judgment.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the trail court's determination of whether a summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29.
In this case, the initial burden of proving entitlement to summary judgment was with Harmony. In support of its motion, Harmony introduced (1) Chiro's deposition, (2) a copy of a brief submitted in another case filed against Harmony and Georgia-Gulf in which plaintiff is a party, and (3) a letter from OSHA to Harmony dated October 31, 1996 informing Harmony of the identification of the mustard gas agents. Harmony introduced these documents in an attempt to show plaintiffs lack of factual support to prove any element of his claim.
The purpose of the Louisiana Environmental Whistleblower Statute, LSA-R.S. 30:2027, is to protect employees from retaliatory action or other adverse employment action by employers for reporting possible environmental violations.[3]Bartlett *1201 v. Reese, 526 So.2d 475, 477 (La.App. 1st Cir.1988), writ denied, 532 So.2d 177 (La.1988).[4] Pursuant to paragraph (B)(2)(a) of LSA-R.S. 30:2027, Chiro was required to establish that the conduct complained of (i.e., refusing to rehire and rehiring at a lower wage rate) occurred as a result of a report of, or complaint of, an environmental violation.
In other words, Chiro must show a causal connection between his participation in the protected activity (i.e., alleged complaining and/or reporting of the alleged environmental violation) and the alleged adverse action taken by Harmony. Powers v. Vista Chemical Co., 109 F.3d 1089, 1094-1095 (5th Cir.1997); Bernofsky v. Tulane University Medical School, 962 F.Supp. 895, 906-907 (E.D.La.1997); see Cheramie v. J. Wayne Plaisance, Inc., 595 So.2d 619, 624 (La.1992). In this case, we find that Chiro failed to produce any evidence to show that Harmony's alleged acts of retaliation were related to Chiro's activities concerning the OSHA investigation of the Georgia-Gulf plant mustard gas incident as required by LSA-R.S. 30:2027(B)(2)(a).
With respect to the first alleged act of retaliation, i.e., Harmony's alleged refusal to rehire plaintiff, we agree with the trial court that Chiro was not an employee within the meaning of the statute at the time this alleged act of retaliation occurred inasmuch as Chiro had voluntarily resigned his employment months before. Thus, as a matter of law, Chiro failed to establish the necessary employment relationship and adverse job action necessary to establish a claim asserted on this basis.[5]
With respect to the second alleged act of retaliation, i.e., Harmony's refusal to compensate him at his previous rate of pay after rehiring, we likewise find that the record is devoid of any evidence to support Chiro's claim. Although this alleged act of retaliation, if proven, occurred during the ensuing employment relationship, and thus would fall within the purview of the statute, Chiro failed to produce any evidence to support or show that the reduced rate of pay was in any way related to or resulted from his participation in any activities occurring during his previous employment with Harmony.
Because Harmony, as the moving party, pointed out an absence of factual support for one or more of the elements essential to Chiro's claim, the burden of proof shifted to Chiro to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden of proof at trial. LSA-C.C.P. art. 966(C)(2). *1202 Inasmuch as Chiro failed to meet his burden of proof under the Louisiana Environmental Whistleblower Statute, we agree that no genuine issue of material fact existed and that Harmony was entitled to summary judgment in its favor as a matter of law.

CONCLUSION
For the foregoing reasons, we affirm the June 23, 1998 judgment of the trial court granting summary judgment in favor of defendant, Harmony Corporation and dismissing, with prejudice, the claims of plaintiff, Henry J. Chiro. All costs of this appeal are assessed against plaintiff/appellant, Henry J. Chiro.
AFFIRMED.
NOTES
[1] In 1996, Chiro earned $18.50 per hour; whereas in June 1997, he was paid $17.30 per hour.
[2] In so ruling, the trial court stated in pertinent part, as follows:

In order for Chiro ... to prevail under R.S. 30:2027, he must show he was an employee, who was retaliated against by his employer because of his reporting or complaining about possible environmental violations. Chiro states in his deposition he voluntarily terminated his employment with Harmony. His allegations of improper treatment arose only after he quit and then attempted to be rehired. It is the opinion of this court that there exists no issues of material fact to the existence of a cause of action under R.S. 30:2027. Mr. Chiro was not an employee for the purposes of invoking any action pursuant to R.S. 30:2027. (emphasis in original).
[3] LSA-R.S. 30:2027(B) provides as follows:

B. (1) Any employee against whom any action is taken as a result of acting under Subsection A of this Section may commence a civil action in a district court of the employee's parish of domicile, and shall recover from his employer triple damages resulting from the action taken against him and all costs of preparing, filing, prosecuting, appealing, or otherwise conducting a law suit, including attorney's fees, if the court finds that Subsection A of this Section has been violated. In addition, the employee shall be entitled to all other civil and criminal remedies available under any other state, federal, or local law.
(2)(a) The term "action is taken" shall include firing, layoff, lockout, loss of promotion, loss of raise, loss of present position, loss of job duties or responsibilities, imposition of onerous duties or responsibilities, or any other action of inaction the court finds was taken as a result of a report of an environmental violation.
(b) "Damages" for the purposes of this Section shall include, but not be limited to, lost wages, lost anticipated wage due to wage increase, or loss of anticipated wages which would have resulted from a lost promotion, any property lost as a result of lost wages, lost benefits, and any physical or emotional damages resulting therefrom.
[4] Bartlett discussed former LSA-R.S. 30:1074.1, which was designated as LSA-R.S. 30:2027 after the 1987 Regular Session. See House Concurrent Resolution No. 247 of the 1987 Regular Session. The text of the statute remained unchanged.
[5] Moreover, even if we were to conclude that Chiro remained an "employee" under the statute after he resigned his employment, there is nothing in the record to indicate that Harmony refused to rehire him. The record shows that Chiro was rehired by Harmony in June of 1997. Also, other than Chiro's unsupported allegations, there is nothing in the record to suggest or show that the lapse of time between Chiro's act of quitting his job with Harmony in December 1996 and Harmony's subsequent rehiring of Chiro in June 1997 was related in any way to Chiro's prior protected activities concerning the OSHA investigation of the Georgia-Gulf plant.