806 So.2d 984 (2002)
Everett A. BEAR, Willie Defrene, Joel J. Faucheaux, Jr., Jeff Ferguson, David Folse, Michael Genusa, Gregory Gotangco, Robert Hackbarth, Rodger A. Johnson, Robert G. Koster, Richard C. Mansfield, Leonard J. Mitchell, et al.
v.
PELLERIN CONSTRUCTION, INC.
No. 2001-CA-0984.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 2002.
Rehearing Denied March 1, 2002.
*987 Gladstone N. Jones, III, Peter N. Freiberg, Jones, Verras & Freiberg, L.L.C., New Orleans, Counsel for Plaintiff/Appellee.
Gerald J. Gallinghouse, Metairie, and John A. Stewart, Jr., Wayne J. Jablonowski, Hulse & Wanek, APLC, New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY.
MIRIAM G. WALTZER, Judge.
Terminated employees of Pellerin Construction Company sued their former employer alleging that Pellerin terminated them in retaliation for reporting certain environmental violations. Pellerin appeals a judgment awarding its former employees damages under Louisiana's whistleblower statute.

STATEMENT OF FACTS AND HISTORY OF THE CASE
Pellerin, a construction company, contracted with Texaco's subsidiary Bridgeline and agreed to dismantle (in Pointe Au Chien, Louisiana) and reconstruct (in Paradis, Louisiana) a gas treatment and pipeline plant in February 1997. Pellerin received an assurance, as did Texaco, that the job did not involve asbestos material. Unfortunately, the parties discovered the presence of asbestos when the job was nearly complete. Pellerin confirmed the presence of asbestos insulation on 27 June 1997 during the reconstruction of the plant at Paradis. On 27 June 1997 both Pellerin and Bridgeline notified Louisiana's Department of Environmental Quality of the finding and obtained the necessary permits to begin abatement. Another company contracted to contain, abate, and remove, the asbestos materials.[1]
On 1 July 1997, Pellerin held an asbestos awareness class for all employees at the job site. Pellerin offered medical exams for its employees. Pellerin continued the job after abatement.
On 10 July 1997, plaintiffs' attorney held a meeting to inform potential plaintiffs of their rights regarding exposure.[2] Two Pellerin management employees attended the meeting. At this meeting, plaintiffs' attorney announced that he intended to notify LDEQ and OSHA. On 11 July 1997, his office notified LDEQ and OSHA of the possible violations. On 14 July 1997, LDEQ inspected the plant, and OSHA inspected the plant for possible violations on 20 August 1997.[3]
As the work continued, the morale of the workforce changed. Productivity declined and the employees became increasingly distracted from their work. Both management employees and the plaintiffs/employees testified to this change in the work place. In late July, a news broadcast reported the finding of asbestos. Moreover, Texaco/Bridgeline had concerns about possible legal action, including injunction proceedings to suspend work activities, by the exposed employees and informed Pellerin's management of these concerns. Luther *988 Despino, Pellerin's supervisor (and co-owner of Pellerin) for this project, believed that the employees intended to cripple the job. On 1 August 1997, an employee, either negligently or intentionally, left a tool, a level, in the pipeline, a potentially dangerous situation. Texaco/Bridgeline only discovered the level upon inspection. On 5 August 1997, an air monitor disappeared and only reappeared after the police arrived.
Despino reported the incident to Soule, along with his more general concerns. On the evening of 5 August 1997, Soule, Despino, Dave Martin (a Texaco/Bridgeline employee), and another Pellerin employee met and discussed the situation. Soule sought legal advice. Soule decided to terminate all employees at the job site. On 6 August 1997, Pellerin terminated all employees, including the plaintiffs, at the Paradis facility.
The terminated employees sued Pellerin alleging that Pellerin terminated them in whole or in part because they or their attorney reported the possible violation to LDEQ and OSHA. After trial, the trial court concluded that "reason [sic] stated in the termination notice was pretextual and that the termination was retaliatory based upon plaintiffs' complaints to DEQ and OSHA and that involvement in legal proceedings."
FIRST ASSIGNMENT OF ERROR: Pellerin argues that the trial court erred in concluding that the terminated employees proved that their reports of possible environmental violations to LDEQ and OSHA caused or contributed to Pellerin's termination of all of its employees at the Paradis facility.[4]
Pellerin argues that the employees failed to prove illicit motive for the termination. The employer urges us to reverse the trial court's finding that the former employees proved with sufficient evidence that Pellerin terminated all of its employees at the Paradis facility in retaliation for reporting potential environmental violations.
It is well settled that credibility determinations and findings of fact by the trial judge are given great weight and will not be reversed on appeal absent manifest error. Bartlett v. I.D. Reese, 569 So.2d 195, 198 (La.App. 1 Cir.1990). This is so because only the finder of fact has the opportunity to observe the demeanor of the witness and listen to the variation in the pitch and tone of his voice that bear so heavily on determinations of credibility. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict a witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable *989 factfinder would not credit the witness' story, the court of appeal may well find manifest error, even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's conclusion is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous.
We must consider the cause of action under Louisiana's environmental whistle-blower statute. LSA-R.S. 30:2027 provides in pertinent part:
A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local government agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:
(1) Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.
* * * * * *
B. (1) Any employee against whom any action is taken as a result of acting under Subsection A of this Section may commence a civil action ... and shall recover from his employer triple damages resulting from the action taken against him.
LSA-R.S. 30:2027.
The purpose of the Louisiana environmental whistleblower statute is to protect employees from retaliatory action or other adverse employment action by employers for reporting possible environmental violations. The employee must prove that the adverse employment action occurred as a result of a report of, or complaint of, an environmental violation. Chiro v. Harmony Corp., 99-0453 (La. App. 1 Cir. 11/5/99), 745 So.2d 1198, 1200-01. LSA-R.S. 30:2027 requires that the employee "discloses, or threatens to disclose." Pellerin did not assign as error application of the Louisiana Whistleblower statute, although on appeal they argue that the report to LDEQ in July 1997 by the employees' attorney occurred after Texaco/Bridgeline reported the possible violations to LDEQ. No prior court has limited the statute's application to initial disclosures, as opposed to subsequent or repeated reports, of possible environmental violations. To state a cause of action under § 2027, the employee must show illicit motivation, that the employer was motivated to fire an employee because of the employee's disclosure of an environmental violation. Otherwise, § 2027 would be transformed into a wrongful discharge statute, covering adverse employment actions that have nothing to do with an employee's disclosure of an environmental violation-a result inconsistent with Louisiana's employment at will doctrine. Powers v. Vista Chemical Co., 109 F.3d 1089, 1094-95 (C.A. 5th Cir. 4/11/97).
After reviewing the entire record, we are not persuaded that the trial court erred in concluding that the reports by the employees' attorney of possible environmental violations motivated Pellerin's termination of these employees. The evidence clearly establishes that in June 1997 Pellerin and Texaco, the party contracting its services, discovered asbestos in the insulation at the Paradis facility and notified LDEQ of the hazard. Moreover, Pellerin/Texaco-Bridgeline informed the exposed employees of the hazard and offered medical monitoring assistance. In early July, plaintiffs' attorney held a meeting with numerous Pellerin employees, including *990 two management employees. At this meeting the attorney stated to the crowd that he intended to report the possible environmental violations to the appropriate authorities. The day after this meeting, the attorney's associate notified both LDEQ and OSHA. A few days after the reports to these agencies, an employee of LDEQ inspected the Paradis facility. The morale at the Paradis facility changed. Employees discussed their possible lawsuits. A television news report advised the public of the hazardous situation. Texaco-Bridgeline had concerns about possible lawsuits, including injunction proceedings. Pellerin's managing vice-president at the Paradis facility noted these concerns in his records. At one point, he noted that he believed the plaintiffs' attorney intended to cripple the job. After two incidents of possible sabotage, Pellerin's president, Oliver Soule, decided to shut the job down and terminate all employees on 5 August 1997. Before making this decision, Soule met with Texaco-Bridgeline's representative. Pellerin conducted no internal investigation into the possible sabotage. The only attempt to remedy or investigate the alleged sabotage consisted of a report to the sheriff of a missing air monitor on 5 August 1997. After a search of the plant, employees discovered the air monitor.
Although we agree with Pellerin's arguments that the record contains no direct evidence that Pellerin's decision to terminate these employees resulted from the reports to LDEQ and OSHA, we do find the record contains sufficient circumstantial evidence from which a reasonable factfinder could have concluded that Pellerin's decision to terminate resulted in part from the employees' reports to LDEQ and OSHA of the possible environmental violations. The evidence establishes that Pellerin knew of the reports to LDEQ and OSHA, whether Soule knew or not begs the question. Moreover, we find no error in the trial court's finding that Soule knew of the reports. Soule was President of Pellerin, a small construction company. This contract with Texaco-Bridgeline constituted one of the largest jobs, in terms of dollars, for the company. The evidence further proves that Texaco-Bridgeline, an important contractor for Pellerin, showed some concern regarding potential lawsuits involving the environmental violations. Moreover, the trial court found that Pellerin's espoused reason for the terminations, sabotage, constituted a fabrication, a pretext. We find nothing in the record to persuade us to reverse this decision. Although we agree with Pellerin that plaintiffs bear the burden of proof, we find no error in consideration of this pretext or fabrication as a factor in finding Pellerin's illicit motive.
The trial court found, and the record supports the finding, that Pellerin dismissed all employees after Texaco expressed concern about possible lawsuits arising from the environmental violations. We find no error in the trial court's consideration of Texaco's concerns about the threatened lawsuits as a factor in finding Pellerin's illicit motive. The threatened lawsuits involved the same conduct as the reports to LDEQ and OSHA.
After a careful review of the entire record, we find no error in the trial court's conclusion that the reports to LDEQ and OSHA by plaintiffs' attorney contributed to Pellerin's decision to terminate all of its employees at the Paradis facility. We believe the record supports the finding that Pellerin's motive in terminating these employees resulted from the reports of environmental violations.
SECOND ASSIGNMENT OF ERROR: The trial court erred by awarding damages for lost earnings in the absence of any evidence.
Pellerin argues that the employees offered no evidence, other than *991 their own self-serving testimony, to support their claim for lost wages. Under Louisiana jurisprudence, damages for lost wages may be established by any proof which reasonably establishes the claim, including the plaintiff's own reasonable testimony. While claims for past lost wages must be established with some degree of certainty, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiff's claim. This award may be supported by the plaintiff's detailed and uncorroborated testimony. Daniels v. Burridge, XXXX-XXXX (La.App. 4 Cir. 3/21/01), 785 So.2d 906, 911. Plaintiff bears the burden to prove the length of time he did not work. The ANMAK Foundation, Inc. v. St. Patrick Hospital, 594 So.2d 951 (La. App. 3 Cir.1992).
Although the employees offered no documentary evidence of the length of time they remained unemployed after 6 August 1997, the individuals testified of the various periods of unemployment. We find no error in the trial court's award of lost wages to the terminated employees. We affirm the judgment of the trial court awarding plaintiffs lost wages.
THIRD ASSIGNMENT OF ERROR: The trial court erred in awarding plaintiffs emotional damages.
Pellerin argues that the trial court erred by awarding the terminated employees emotional damages, since the harm consisted merely of minor worry and inconvenience. We do not agree. Without conducting an investigation or attempting to identify the responsible party, Pellerin terminated all of its employees on 6 August 1997 and gave as its reason "sabotage." Thus, these employees faced both unexpected termination and unfounded accusations. We disagree with Pellerin's characterization of the emotional damages suffered by the terminated employees. For these reasons, we affirm the trial court's award of emotional damages.
FOURTH ASSIGNMENT OF ERROR: The trial court erred in awarding plaintiffs damages for expenses incurred in attending the trial in this matter.
For the reasons discussed in the Second Assignment of Error, we affirm the judgment of the trial court awarding lost wages and expenses to the plaintiffs.
FIFTH ASSIGNMENT OF ERROR: The trial court erred by failing to offset any award for lost wages by the settlement reached of the complaint with the National Labor Relations Board.
The trial court found that the compromise of the claims before the NLRB did not require an offset of the award in this action. To settle the claims before the NLRB, the employees and Pellerin agreed that,
Pellerin has the right to setoff the settlement amount against any future backpay award, but nothing in this release shall be construed to discharge the potential liability in civil action No. 98-13425 [the present lawsuit] or to otherwise limit the potential liability of Pellerin in civil action No. 98-13425.
Pellerin argues that the intent of the parties to allow a setoff for backpay is clearly expressed in the written agreement. However, the trial court found that the agreement expressly limited such setoffs to actions other than the present suit. We find nothing in the agreement to persuade us that the trial court erred.

CONCLUSION
We affirm the judgment awarding plaintiffs' damages under LSA-R.S. 30:2027.
AFFIRMED.
GORBATY, J., dissents with reasons.
*992 GORBATY, J., dissenting, with reasons.
The majority states that the trial court was not manifestly erroneous in its factual finding that Pellerin's reasons for firing plaintiffs were pretextual. Because I do not believe the whistleblower statute is applicable to the facts of this case, I respectfully dissent.
The whistleblower statute was enacted to encourage workers to report possible environmental violations, without fear of reprisal by their employers. The evidence in the case below indicates that Pellerin reported the asbestos discovery to LDEQ on June 27, 1997, the same day the asbestos was discovered. Thus, Pellerin "blew the whistle" on itself. After reporting the hazard, Pellerin held meetings with its employees to inform them of the potential health hazard from asbestos exposure, and offered medical monitoring for the employees. Pellerin then proceeded in total compliance with governmental regulations to have the asbestos abated. Once the abatement was completed, the job was continued. At any time during this process, Pellerin was free to fire any one of the plaintiffs without cause.
It is nonsensical to reason that an employee can "blow the whistle" after his employer has already "blown the whistle" on itself, and recover under the statute if the employee is subsequently fired from his job. Accordingly, because I do not find that plaintiffs "blew the whistle" on their employer, they have not carried their burden of proof under the statute. Therefore, the burden never shifted to Pellerin to prove that its reasons for firing the plaintiffs were not pretextual.
NOTES
[1] Plaintiffs neither allege nor offer any proof that any party wrongfully exposed them to asbestos material after acquiring knowledge of the presence of asbestos fibers on the job site.
[2] In late July 1997, Pellerin's employees filed suit against various defendants, including Texaco and Bridgeline.
[3] The trial court stated that OSHA inspected the plant on 20 July 1997. However, the record evidence does not support this conclusion. Although Oliver Soule, Pellerin's president, stated in his first deposition that OSHA inspected the plant in July or August, both his later testimony and the documentary evidence, including OSHA's records, establish that the inspection actually occurred on 20 August 1997. The plaintiffs do not dispute this error in the trial court's conclusions.
[4] Pellerin does not assign as error application of LSA-R.S. 30:2027, the Louisiana Whistleblower statute.