860 So.2d 277 (2003)
Danny SANCHEZ
v.
GEORGIA GULF CORPORATION, Kroll Laboratory Specialists, Inc. and Consolidated Drug Compliance & Management, Inc.
No. 2002 CW 0904R.
Court of Appeal of Louisiana, First Circuit.
November 12, 2003.
Rehearing Denied December 18, 2003.
*279 Andre LaPlace, Baton Rouge, Counsel for Plaintiff/Respondent Danny Sanchez.
F. Barry Marionneaux, F. Charles Marionneaux, Plaquemine, Counsel for Defendant/Realtor Georgia Gulf Corporation.
Before: FOIL, WHIPPLE, KUHN, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
This writ application is before us on remand from the Louisiana Supreme Court. For the reasons that follow, we grant the writ application, reverse the trial court, and grant relator's motion for summary judgment.

FACTS AND PROCEDURAL HISTORY
On June 15, 2000, Danny Sanchez, an "at-will" employee of Georgia Gulf Corporation (Georgia Gulf), submitted to a random drug screen urinalysis. He was subsequently terminated on June 22, 2000, for allegedly testing positive for the presence of a cocaine metabolite, Benzolyecgonine. Thereafter, on September 26, 2000, Sanchez instituted this action against Georgia Gulf, contending that it had breached its statutory duties to him in dismissing him for a positive drug test without first allowing him the opportunity to provide information about prescription medication he was taking that could result in an erroneous positive result.[1] Sanchez sought damages for physical and mental pain and suffering, loss of income, loss of reputation, and medical expenses.
Georgia Gulf responded by filing a motion for summary judgment, contending that because it could fire Sanchez "for any reason or for no reason" pursuant to the at-will employment doctrine, Sanchez had no claim against it for wrongful termination.[2] In opposing the motion, Sanchez argued that La. R.S. 49:1001-1021, the statutory scheme governing random drug testing ("the drug-testing statute"), provided a statutory basis for his wrongful termination claim, and that where termination was based upon drug-testing results, certain statutory requirements must be met, such as review of the results by a medical review officer and questioning of the employee as to any medications he may be taking that may give rise to a false positive result. According to Sanchez, these statutory requirements were not followed herein, and therefore, he had a claim against Georgia Gulf for wrongful termination.[3]
*280 For purposes of the motion, Georgia Gulf conceded that it had not followed the procedures mandated by La. R.S. 49:1007, in that the results of Sanchez's urinalysis were not reviewed by a medical review officer, prior to Sanchez's termination. Nonetheless, it contended that La. R.S. 49:1001-1021 does not prohibit an employer from taking disciplinary action against an employee, such as termination of employment, based on a positive drug test even though the test results are obtained without compliance to the drug-testing procedures set forth therein. Thus, Georgia Gulf contended that it was still free to fire Sanchez pursuant to the at-will employment doctrine.
Following a hearing on the motion, the trial court concluded that La. R.S. 49:1001-1021, in particular 49:1012, does grant an employee a cause of action for wrongful termination where the employee is fired because of drug test results obtained without compliance to the drug testing provisions set forth therein. Accordingly, the trial court denied Georgia Gulf's motion for summary judgment.
From that ruling, Georgia Gulf filed a writ of supervisory review with this court, which was denied on July 15, 2002. However, the Louisiana Supreme Court then granted Georgia Gulf's writ application and remanded the matter to this court with instructions "to address the relationship between the drug testing requirements set forth in La. R.S. 49:1001[-1021] and the employment at will doctrine." Sanchez v. Georgia Gulf Corp., 02-2198 (La.11/27/02), 836 So.2d 9.

DISCUSSION

Employment At-Will Doctrine
The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will." Quebedeaux v. Dow Chemical Co., 01-2297, pp. 4-5 (La.6/21/02), 820 So.2d 542, 545. This default rule is contained in La. C.C. art. 2747, which provides that "[a] man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing [and t]he servant is also free to depart without assigning any cause." Thus, under La. C.C. art. 2747, an employer is generally at liberty to dismiss an employee at any time, for any reason, without incurring liability for the discharge.
However, as recently noted by the Louisiana Supreme Court, this right is tempered by numerous federal and state laws, which proscribe certain reasons for dismissal of an at-will employee.[4] Aside *281 from the federal and state statutory exceptions, there are no broad public policy considerations creating exceptions to employment at-will, or affecting relationships between an employer and employee. Quebedeaux, 01-2297 at 5, 820 So.2d at 545-546.
In the instant case, it is undisputed that Sanchez was an at-will employee. It is further undisputed that Georgia Gulf did not follow all of the procedures set forth in La. R.S. 49:1001-1021. Thus, the question presented is a legal onewhether La. R.S. 49:1001-1021 prohibits an employer from terminating an at-will employee for testing positive on a random drug urinalysis where the employer failed to follow the statutory procedures for conducting the drug test set forth therein.

Louisiana's Drug Testing Statute
In 1990, the Louisiana legislature adopted comprehensive drug-testing procedures, which are now set forth in La. R.S. 49:1001-1021. Pursuant to this legislation, drug-testing of individuals in residence in Louisiana and of samples collected in this state shall be performed in accordance with the Mandatory Guidelines for Federal Workplace Drug Testing Programs, as issued by the National Institute on Drug Abuse Guidelines and published in the Federal Register ("NIDA guidelines").[5] La. R.S. 49:1005(A) and (B); La. R.S. 49:1001(14). The NIDA guidelines, which specify collection and testing procedures in order to assure accurate and unadulterated tests, set out specific requirements for reviewing and interpreting positive test results, and require that a medical review officer review drug tests prior to reporting the results to the employer. Price v. City of Bossier City, 96-2408, pp. 2-3 (La.5/20/97), 693 So.2d 1169, 1171.
Specifically, the statutory framework contemplates that the sample will be collected by a trained individual known as the "collection site person." La. R.S. 49:1006; La. R.S. 49:1001(5); 59 Fed.Reg. 29908 § 1.2 and 2.2 (1994). The transfer of the sample to an appropriate laboratory is then regulated to ensure proper chain of custody. La. R.S. 49:1006(E).
An initial screening test will then be performed on the sample. This test is an immunoassay screen used to eliminate "negative" urine specimens from further consideration. La. R.S. 49:1008; La. R.S. 49:1005(A); La. R.S. 49:1001(9). If the initial test is positive, a second test, called a confirmatory test, shall be performed by a NIDA- or CAP-FUDT[6]-certified laboratory.[7] The confirmatory test, which is a procedure used to identify a specific drug or metabolite, is independent of the initial test and uses a different technique and chemical principle in order to ensure reliability and accuracy. La. R.S. 49:1001(6).
Of particular importance to the instant case is La. R.S. 49:1007, which provides that all confirmed positive results of drug testing shall be reported directly from the laboratory to a qualified medical review officer (MRO). In reviewing the confirmed positive result, the MRO shall contact the individual who submitted the specimen before making a final decision to *282 verify a positive result, and reporting that result to the employer. La. R.S. 49:1007(C).
In addition to the procedures set forth above, 49:1001-1021 also contains provisions relating to the rights of the employee as well as the responsibilities of the employer. According to La. R.S. 49:1011(A) an employee who has been confirmed positive shall, upon his written request, have the right to access within seven working days records relating to his drug tests. Additionally, La. R.S. 49:1012 provides that all information received by the employer through its drug testing program are confidential communications. Louisiana Revised Statute 49:1012 further provides the following:
B. No cause of action for defamation of character, libel, slander, or damage to reputation or privacy arises in favor of any person against an employer or testing entity who has established a program of drug or alcohol testing in accordance with this Chapter, unless:
(1) The results of that test were disclosed to any person other than the employer or testing entity, an authorized employee or agent of the employer or testing entity, the tested employee, or the tested prospective employee;
(2) The information disclosed was based on a false test result or a failure to comply with the provisions of this Chapter;
(3) All elements of an action for defamation of character, libel, slander, or damage to reputation or privacy as established by statute or civil law, are satisfied.

Relationship Between La. R.S. 49:1001-1021 and the Employment At-Will Doctrine
In 1990, this court peripherally addressed the issue of an at-will employee's right to sue his employer for wrongful termination based on an allegedly erroneous drug test result in Herbert v. Placid Refining Co., 564 So.2d at 373-373. In affirming the dismissal of the employee's cause of action against the drug-testing company that allegedly reported incorrect results, this court found that even if it were assumed that the drug-testing company had negligently performed the tests, the employee could not have recovered against his employer for the resulting termination. This court concluded that because there was no constitutional or statutory provision prohibiting the employer from discharging its at-will employee as the result of a negligently-administered drug test, the employee likewise had no claim against the drug-testing company for negligently performing the test. Herbert, 564 So.2d at 373-373. (Emphasis added.)
Shortly after our decision in Herbert, the Louisiana legislature enacted the drug-testing statute outlined above. We acknowledge that La. R.S. 49:1001-1021 directs that certain procedures must be followed in administering drug tests and in evaluating and reporting the drug test results. We further acknowledge, as do the parties, that Georgia Gulf did not follow all of those procedures in regard to Sanchez. However, from a plain reading of the drug-testing statute, the legislature did not specifically provide that an employer was prohibited from discharging an at-will employee if it failed to have the confirmed positive results reviewed by a MRO.
Louisiana Revised Statutes 49:1012 addresses an employee's right to confidentiality, and an employer's obligation to ensure such confidentiality, with regard to all information received through the employer's drug testing program and sets forth the circumstances under which an employee *283 may assert a claim for "defamation of character, libel, slander, or damage to reputation or privacy." This section, however, does not address an employee's right to bring an action for wrongful termination.
Further, La. R.S. 49:1005(A) and 1008(E) deal with employers' conduct when mandatory or discretionary consequences will be rendered to an employee as a result of drug-testing. According to La. R.S. 49:1005(A), drug testing provided for in the statute shall be performed in a NIDA- or CAP-FUDT-certified laboratory if as a result of that testing, mandatory or discretionary consequences will be rendered to the individual. Additionally, La. R.S. 49:1008(E) provides that the results of the initial screening drug test may not be used as a basis for rendering permanent mandatory or discretionary consequences to the individual submitting the specimen. (Emphasis added.) However, neither of these statutes state that an employer's failure to follow the statutory requirements set forth therein will subject it to liability for wrongful termination, nor do they prohibit the employer from terminating an at-will employee under these circumstances.
When the law is clear and unambiguous, and its application does not result in absurd consequences, it shall be applied as written and no interpretation may be made in search of the legislature's intent. La. C.C. art. 9. When a statute is clear, the court must give credence to the mandate expressed by the legislature and cannot resort to construing a statute based on the spirit of the law as opposed to the plain wording of the law. Vogt v. Board of Levee Commissioners of the Orleans Levee District, 95-1187, pp. 9-10 (La.App. 4th Cir.9/4/96), 680 So.2d 149, 155. Further, courts may not extend statutes to situations, which the legislature never intended to be covered thereby. Schackai v. Louisiana Board of Massage Therapy, 99-1957, p. 13 (La.App. 1st Cir.9/22/00), 767 So.2d 955, 962.
Therefore, based on this court's decision in Herbert and a plain reading of the drug-testing statute as discussed above, we find that La. R.S. 49:1001-1021 does not provide for an exception to the employment at-will doctrine.[8]

Motion for Summary Judgment
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Keller v. Case, 99-0424, p. 4 (La.App. 1st Cir.3/31/00), 757 So.2d 920, 922, writ denied, 00-1874 (La.9/29/00), 770 So.2d 354. The interpretation of a statute is a question of law, which may be decided by summary judgment. Levy v. Vincent, 01-0277, *284 p. 3 (La.App. 3rd Cir.7/18/01), 796 So.2d 34, 36.
As stated above, we find that La. R.S. 49:1001-1021 does not provide a statutory basis for Sanchez's wrongful termination claim, nor does it provide an exception to the employment at-will doctrine. Therefore, we find that Georgia Gulf did prove that it was entitled to judgment as a matter of law and grant its' application for supervisory writs. Further, we reverse the judgment of the trial court, and grant Georgia Gulf's motion for summary judgment on Sanchez's wrongful termination claim.

CONCLUSION
For the foregoing reasons, Georgia Gulf's application for supervisory writs of review is granted. As set forth above, La. R.S. 49:1001-1021 does not provide an exception to Louisiana's at-will employment doctrine. Therefore, we reverse the judgment of the trial court denying Georgia Gulf's motion for summary judgment on Sanchez's wrongful termination claim, and hereby grant summary judgment in favor of Georgia Gulf on that claim. All costs are hereby assessed to the plaintiff/respondent, Danny Sanchez.
WRIT GRANTED; JUDGMENT OF TRIAL COURT REVERSED; SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF/RELATOR GRANTED.
WHIPPLE, J., dissents for the reasons assigned.
KUHN, J., dissents for the reason assigned by Judge WHIPPLE.
WHIPPLE, J., dissenting.
Pursuant to the employment-at-will doctrine, the employer and employee are free to end an at-will employment relationship at any time, and for any reason, without liability, provided that the termination violates no statutory or constitutional provision. Herbert v. Placid Refining Company, 564 So.2d 371, 373 (La.App. 1st Cir.), writ denied, 569 So.2d 981 (La.1990). As stated by the majority, the question is whether LSA-R.S. 49:1001 et seq. prohibits an employer from firing an at-will employee for testing positive on a random drug urinalysis without consequence where the employer failed to follow the statutory procedures for conducting the drug test set forth therein. I would conclude that it does.
Pursuant to the drug-testing procedures set forth in LSA-R.S. 49:1001 et seq., drug-testing of individuals in residence in Louisiana and of all samples collected in this state shall be performed in accordance with the Mandatory Guidelines for Federal Workplace Drug Testing Programs, as issued by the National Institute on Drug Abuse Guidelines and published in the Federal Register ("NIDA guidelines").[1] LSA-R.S. 49:1005(B); LSA-R.S. 49:1001(14).
Under this statutory framework, if the initial test is positive, a second test, called a confirmatory test, shall be performed by a NIDA- or CAP-FUDT-certified2 laboratory.[2] LSA-R.S. 49:1008(D); LSA-R.S. 49:1001(6). The confirmatory test uses a different technique and chemical principle from that of the initial test in order to ensure reliability and accuracy. LSA-R.S. 49:1001(6).
*285 The drug-testing statute further provides that all confirmed positive drug test results shall be reported directly from the laboratory to a qualified "medical review officer" for review. LSA-R.S. 49:1007(A) & (B). A "medical review officer" ("MRO") is statutorily defined as a "licensed physician responsible for receiving laboratory results generated by [an employer's] drug testing program who has knowledge of substance abuse disorders and has appropriate medical training to interpret and evaluate an individual's positive test result together with his medical history and any other relevant biomedical information." LSA-R.S. 49:1001(10).
In reviewing the confirmed positive result, the employer's designated MRO shall contact the individual who submitted the specimen, as outlined in the NIDA guidelines, before making a final decision to verify a positive result, and reporting that result to the employer. LSA-R.S. 49:1007(B) & (C). With regard to the purpose of the requirement of review by an MRO, the NIDA guidelines provide, as follows:
An essential part of the drug testing program is the final review of results. A positive test result does not automatically identify an employee/applicant as an illegal drug user. An individual with a detailed knowledge of possible alternate medical explanations is essential to the review of results. This review shall be performed by the MRO prior to the transmission of results to administrative agency officials [or, in this case, the employer].
* * *
The role of the MRO is to review and interpret positive test results obtained through the agency's testing program. In carrying out this responsibility, the MRO shall examine alternate medical explanations for any positive test result. This action could include conducting a medical interview with the donor, review of the donor's medical history, or review of any other relevant biomedical factors. The MRO shall review all medical records made available by the donor when a confirmed positive test could have resulted from legally prescribed medication.
59 Fed.Reg. 29908 § 2.6(a) & (b) (1994) (emphasis added).
Additionally, with regard to the requirement that the MRO contact the individual who submitted the specimen, the NIDA guidelines further provide that prior to making a final decision to verify a positive test result, the MRO shall give the donor an opportunity to discuss the test result with him. 59 Fed.Reg. 29908 § 2.6(c) (1994). Under the statutory framework of the drug-testing statute and the NIDA guidelines, only after reviewing and verifying a positive test result shall the MRO report the result to the employer. LSA-R.S. 49:1007(B); 59 Fed.Reg. 29908 § 2.6(c)(1994).
When the Louisiana drug-testing statute was enacted, the stated purpose of Act No. 1036 was, in pertinent part, as follows:
[t]o enact Chapter 17 of Title 49 of the Louisiana Revised Statutes of 1950 ... relative to drug testing of ... employees employed by Louisiana employers
...; to provide that testing, which may result in mandatory or discretionary consequences to the individual, and which is performed to detect use of marijuana, opioids, cocaine, amphetamines, and phencyclidine, shall be performed in laboratories certified by the National Institute on Drug Abuse or the College of American Pathologists for Forensic Urine Drug Testing in accordance with National Institute on Drug Abuse guidelines; to provide *286 precise technical guidelines for the implementation of such drug testing, including guidelines for collection of specimens, testing procedures, reporting of results, laboratory personnel qualifications, laboratory certification, screening laboratories, drug rehabilitation services, and related matters .... (Emphasis added).
Moreover, in looking to the language of the statute itself in the interpretation of any statute. Smith v. Southern Holding, Inc., XXXX-XXXX, p. 7 (La.1/28/03), 839 So.2d 5, 10, section 1002 of the drug-testing statute, entitled "Applicability," sets forth the broad scope of the drug-testing statute, stating that it "applies to testing for the presence of marijuana, opioids, cocaine, amphetamines, and phencyclidine." LSA-R.S. 49:1002(A). The statute lists some exceptions to this broad scope of coverage, and, specifically, as amended in 2001, excludes some drug testing by employers, as follows: "This Chapter shall not apply to any employer or an employer's agent who uses an on-site screening test to test an employee or prospective employee when there are no consequences as defined in this Chapter."[3] LSA-R.S. 49:1002(I)(emphasis added). Thus, while certain drug testing may be exempt from the requirements of the drug-testing statute, the plain wording of the statute dictates that the exemption will apply only where there will be no consequences resulting from the testing. Conversely, reading the statute as a whole, along with this amendment, clearly this statute requires that where there will be consequences of the testing, such as termination of employment based on a positive result, the procedures set forth in the drug-testing statute must be followed.
Indeed, a reading of the entire drug-testing statute demonstrates that the statute's requirement, i.e., that an employer adhere to the procedures set forth therein if the employer intends to use the results to impose consequences on the employee submitting the specimen, is the clear, underlying theme of the statute as a whole.[4] In interpreting a statute, all parts of the statute must be read together as a whole so that no section, clause, sentence or word becomes superfluous or meaningless. Moreover, the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Lasyone v. Phares, XXXX-XXXX, p. 4 (La. App. 1st Cir.5/22/02), 818 So.2d 1068, 1071, writ denied, XXXX-XXXX (La.10/14/02), 827 So.2d 423.
In addition to the language of LSA-R.S. 49:1002(A) and (I), the drug-testing statute further provides that a NIDA- or CAPFUDT-certified laboratory or a state-certified *287 screening laboratory must be utilized in conducting the required testing if, "as a result of such testing, mandatory or discretionary consequences will be rendered to the individual." LSA-R.S. 49:1005(A)(1); LSA-R.S. 49:1001(20); LSA-R.S. 49:1008. Additionally, the drug-testing statute prohibits the use of the results of the initial screening drug test as a basis for rendering "permanent mandatory or discretionary consequences" to the individual submitting the specimen. LSA-R.S. 49:1008(E).
While the statute obviously contemplates that the results of a confirmed positive test, reviewed and reported as positive by an MRO, may be used to render mandatory or discretionary consequences to an employee testing positive, the statute also clearly contemplates that such employment action cannot be based on a positive drug test unless the specific and detailed requirements of the statute have been followed.[5] LSA-R.S. 49:1002(A) & (I); LSA-R.S. 49:1005(A)(1); LSA-R.S. 49:1007; LSA-R.S. 49:1008(E).
In sum, I believe that the legislative framework of the drug-testing statute is designed to ensure that drug tests meet certain standards that guarantee reliability and accuracy before they can be used to support mandatory or discretionary consequences to an individual. Thus, reliance by an employer on drug test results that are obtained without compliance to the requirements of the drug testing statute in rendering employment consequences, such as termination of employment, in my opinion, violates the statutory provisions of LSA-R.S. 49:1001 et seq. Accordingly, the civil immunity granted by the employment at-will doctrine should not insulate the employer from suit for wrongful termination.[6]
*288 Accordingly, I dissent from the majority opinion and would conclude that Georgia Gulf, in support of its motion for summary judgment, failed to prove that it was entitled to judgment as a matter of law, in that it conceded that it had not followed the statutory dictates of LSA-R.S. 49:1001 et seq. when it relied upon a positive drug test to fire Sanchez. Therefore, Georgia Gulf's application for supervisory writs should be denied. I respectfully dissent.
NOTES
[1] Sanchez also named as defendants Kroll Laboratory Specialists, Inc., the company that performed the actual drug test and who reported the results to Georgia Gulf, and Consolidated Drug Compliance & Management, Inc., the company that administered the drug test and collected the sample. However, Sanchez later dismissed his claims against these defendants.

In addition to the claim based on breach of statutory duties, Sanchez also asserted claims based on breach of an implied contract and defamation. However, there are no issues relating to these claims before us in this writ application.
[2] In its motion for summary judgment, Georgia Gulf also sought dismissal of Sanchez's defamation claim, contending that Sanchez could not prove all of the elements of that claim. The trial court granted Georgia Gulf's motion as to the defamation claim and dismissed that claim with prejudice.
[3] Although Sanchez did not specifically state in his petition that he was asserting a claim for wrongful termination, he averred that Georgia Gulf violated its statutory duties to him in that it had fired him for a positive drug test result obtained in violation of the provisions of La. R.S. 49:1001-1021. Moreover, Sanchez listed "[l]oss of income, including benefits" as damages he suffered. Loss of income and benefits is an element of damages in a wrongful termination claim. See Bear v. Pellerin Construction, Inc., 01-0984, p. 8 (La. App. 1st Cir.1/30/02), 806 So.2d 984, 990-991. Based on our review of the pleadings, we conclude that Sanchez is clearly complaining of the discharge itself, albeit based upon the test results. See Herbert v. Placid Refining Co., 564 So.2d 371, 373 (La.App. 1st Cir.), writ denied, 569 So.2d 981 (La.1990) (quoting Johnson v. Delchamps, 897 F.2d 808, 810 (5th Cir.1990)).
[4] For instance, an employee cannot be terminated because of his race, sex, or religious beliefs. 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and La. R.S. 23:301. Moreover, various state statutes prevent employers from discharging an employee for exercising certain statutory rights, such as the right to present workers' compensation claims. La. R.S. 23:1361; Quebedeaux, 01-2297 at 5, 820 So.2d at 545-546.
[5] See 53 Fed.Reg. 11970 (1988). The NIDA guidelines were later amended in 1994 and 1998. See 59 Fed.Reg. 29908 (1994) and 62 Fed.Reg. 51118 (1998).
[6] A laboratory certified for forensic urine drug-testing by the College of American Pathologists.
[7] This requirement does not apply to pre-employment drug screening. La. R.S. 49:1008(D).
[8] Sanchez argued before the trial court that he was not merely asserting a claim for wrongful termination, but that he also had asserted a claim for loss of reputation in accordance with La. R.S. 49:1012(B). Sanchez reasserts this argument before this panel as a basis for his assertion that the drug-testing statute does in fact provide him with a cause of action against Georgia Gulf, and therefore, provides an exception to the employment at-will doctrine. However, the trial court, in ruling on Georgia Gulf's motion for summary judgment, specifically stated that it considered the loss of reputation action enunciated in La. R.S. 49:1012(B) to come within Sanchez's defamation of character action. We agree with the trial court's assessment and find this argument to be without merit.
[1] See 53 Fed.Reg. 11970 (1988). The NIDA Guidelines were later amended in 1994 and 1998. See 59 Fed.Reg. 29908 (1994) and 62 Fed.Reg. 51118 (1998).
[2] This requirement does not apply to pre-employment drug screening. LSA-R.S. 49:1008(D).
[3] This amendment to the drug-testing statute was enacted after the events giving rise to this litigation. While it clearly would not apply herein, it has no independent relevance to the substantive issues raised by Sanchez. I refer to this amended language only in an attempt to ascertain the legislative intent of the drug-testing statute as a whole.
[4] I further note that as originally presented, Senate Bill No. 878, which formed the basis for Act No. 1036, contained a section regarding legislative intent that provided as follows: "It is the intent of the legislature that the standards mandated in this Chapter be applied and adhered to as strictly and to the fullest extent permissible under the laws and constitution of this state and the United States." (Emphasis added). While this particular section was omitted as a result of amendments proposed by the House Committee on Labor and Industrial Relations, I believe, as discussed more fully hereafter, that the language of the act as enacted nonetheless expresses the requirement that an employer adhere to the provisions of the drug-testing statute if it intends to use those results to render mandatory or discretionary consequences in an employment relationship.
[5] Although I would conclude that LSA-R.S. 49:1001 et seq. requires an employer to abide by the drug-testing procedures set forth therein if the results will be used as the basis for rendering employment consequences, and further, that terminating the employment of an employee on the basis of test results obtained without regard to these procedures will subject the employer to a claim for wrongful termination, I am not persuaded by the trial court's reasoning that this right to bring an action is granted by LSA-R.S. 49:1012.

Louisiana Revised Statute 49:1012 addresses an employee's right to confidentiality, and an employer's obligation to ensure such confidentiality, with regard to all information received through the employer's drug-testing program. LSA-R.S. 49:1012(A). Additionally, this statute sets forth the circumstances under which an employee may assert a claim for "defamation of character, libel, slander, or damage to reputation or privacy" as a result of a breach of the duty to maintain confidentiality. LSA-R.S. 49:1012(B). The legislative history of Act No. 1036, which enacted this section, indicates that the provisions of LSA-R.S. 49:1012(B) were intended to "protect the employer or testing entity from [an] action for defamation or damage to privacy unless certain specific requirements are met." Minutes of June 29, 1990 meeting of House Committee on Labor and Industrial Relations. (Emphasis added).
This statute, however, does not address an employee's right to bring an action for wrongful termination. In fact, counsel for Sanchez acknowledged at oral argument before this court that LSA-R.S. 49:1012 does not specifically grant an employee the right to pursue a claim for wrongful termination.
My belief that an employee may have such a right where the statutory requirements of the drug-testing statute are not met is based upon the language of the above-specified sections in particular, and a plain reading of the drug-testing statute as a whole.
[6] While the jurisprudence interpreting Louisiana's drug-testing statute is sparse, I note that the Louisiana Attorney General had been asked to render an opinion as to the effect of certain requirements of the drugtesting statute on the employment at-will doctrine. La. Att'y Gen. Op. No. 99-100-A (Aug. 30, 1999). In particular, the attorney general was asked to consider whether the statute's prohibition from using on-site drug testing to discharge an at-will employee infringed upon an employer's right to terminate an employment relationship with an at-will employee for any reason with civil immunity. La. Att'y Gen. Op. No. 99-100-A at p. 4. In response, the attorney general noted that an at-will employee may be discharged at any time for any reason, as long as it does not violate any law. The opinion further stated that because termination of an at-will employee is a "mandatory or discretionary consequence" of a positive test result, the drug-testing statute mandates that the test must be performed in state- or nationally-certified labs. La. Att'y Gen. Op. No. 99-100-A at p. 4. The attorney general also noted that, similarly, if any mandatory or discretionary consequence is rendered against an employee as a result of a positive drug test performed in a lab that does not conform to statutory requirements, such a "consequence" would violate law. La. Att'y Gen. Op. No. 99-100-A at p. 4.